**Oakbrook Financial's Asset Liens**
As of February 25, 2013

| Secured Loan Receivable From | Assets | Source |
|---|---|---|
| Arun & Anu Napeville LLC | Mrs. Veluchamy's Mercedes-Benz | OBF-AP001171 |
| | Subordinate mortgage in 1112 S Washington Street, Naperville, IL | See OBF-AP001035-1069 at 1036 and 1041 |
| Creative Automation Company | Virtually all of Creative Automation Company's assets | OBF000334-342 |
| | Mrs. Veluchamy's 6.8 million common non-voting shares of VMark | OBF000344-356 |
| | Mrs. Veluchamy's 700,000 common voting shares of VMark | OBF000344-356 |
| University Subscription Service | All business assets | OBF000155-225 |
| | Mrs. Veluchamy's 70,000 shares in University Subscription Service | OBF000155-225 |
| Automated Presort | Two 1000172 EZ-Flats Premium Machines | OBF000269-318 at 271 |
| | Third mortgage in property located at 2700 Oakbrook Road, Oak Brook, IL | OBF000269-318 at 271 |
| Unique Mailing Services | All of Unique Mailing Services' accounts receivable | OBF000696-722 at 707 |
| | 13 Flowmaster inserting machines | OBF000062-107 and OBF000409-446 |
| | Three surefeed attachers | OBF000108-152 |
| | Two MCS systems | OBF000108-152 |
| | Two MCS 4" imaging heads | OBF000108-152 |
| Unique Data Services | Virtually all of Unqiue Data Services' business assets | OBF000668-722 at 670 and 680 |

## XV.  TRANSFERS OF ASSETS AND BUSINESS INTERESTS BY THE VELUCHAMYS IN INDIA

527.    As with the domestic assets and business interests of the Veluchamys, from 2008 through 2012 I observed that the Veluchamys transferred significant business interests in India to their children and various other family members.  Some of these assets were not disclosed or were disclosed inaccurately in one or more of the Veluchamys' personal financial statements as of December 31, 2007, December 31, 2008, or April 30, 2010.  In a number of cases, business interests that the Veluchamys appeared to still hold as of August 16, 2011 were either not disclosed in their initial bankruptcy filings or were disclosed inaccurately.  Likewise, many of the transfers documented in corporate filings in India from 2008 through 2012 were either not disclosed in the Veluchamys' bankruptcy filings or were disclosed inaccurately.  For many of the transfers described herein, no consideration appears to have been provided in exchange for the transfers.  Moreover, as with VMark, certain dilutive share acquisitions by the Veluchamys' children appear to have been funded by what was originally purported indemnity money.

528.    After claiming an inability to remember what happened to their shares in several of the Indian companies or asserting their Fifth Amendment rights during citation examinations, the Veluchamys produced records subsequent to their bankruptcy filing purporting to reflect historical transfers of business interests that are inconsistent with their own historical personal financial statements as well as contemporaneously filed documents with the Ministry of Corporate Affairs ("MCA") in India.  These records generally purport to show transfers of assets

325

to different relatives in India in 2008 and 2009 for no consideration and contradict the contemporaneously filed corporate records on file with the MCA in India.

529.    During my review I noted evidence, as discussed further in this section, that the Veluchamys transferred millions in cash to businesses in India for the purported purpose of paying debts of their Indian businesses which they had personally guaranteed.  Assuming this to be the true, the Veluchamys do not appear to have received any consideration in exchange for these transfers.

530.    In addition, I also noted evidence that the Veluchamys were the beneficiaries of payments from Veluchamy family businesses domiciled in India that do not appear to have been paid to them in their accounts at Canara Bank in India.  This suggests the potential existence of other undisclosed bank accounts of the Veluchamys in India.

531.    Finally, I noted evidence that the Veluchamys incorporated two new entities in January 2011, less than one month after Bank of America's judgment against the Veluchamys. Based on my review of available documents and testimony, a business purpose for these new entities is not supported and further, there is not information to ascertain how these entities were capitalized with millions of dollars.   Further, just weeks after the Veluchamys filed for bankruptcy, millions of dollars were transferred out of these new entities of which a significant portion was transferred back to the United States.

532.    Below, I briefly overview the Ministry of Corporate Affairs, the publicly available information it provides, and several of the primary filing types I reviewed during the course of my investigation.   Then, I discuss transfers of interests in the Veluchamys' Indian businesses as observed in contemporaneous[1373] MCA filings since December 31, 2008 as well as transfers of monies by and among the Veluchamy family and Veluchamy family businesses

---

[1373]    Throughout this section of my report, I refer to "contemporaneous MCA filings" when describing MCA filings made in the normal course prior to June 15-18, 2012 evidencing transfer activity by the Veluchamys and their family members in India.  Notably, in many instances, I have observed that subsequent to the Veluchamys being questioned regarding transfers of interests in businesses domiciled in India during 341 Meetings of Creditors, revised filings with respect to various business interests in India were filed between June 15 and June 18, 2012.

domiciled in India since 2008. Based on my review of the contemporaneous MCA filings, the majority of these filings were (digitally) signed by Veluchamy family members when they were filed with the MCA. For an overview of assets held by the Veluchamys in India over time, see **Exhibit 23**.

### A. _Overview of the Indian Ministry of Corporate Affairs ("MCA")_

533.    According to the Indian MCA Manual, the aim of the MCA is primarily "to provide and sustain in the democratic society in India an ethical business culture so as to ensure that large corporations are well-run" and to ensure that "investors, as well as lenders, can confidently commit their funds."[1374]  According to the MCA, their objectives are achieved by way of formulating appropriate policies, acts, rules, and processes and by creating appropriate institutional mechanisms by which businesses are operated, regulated, administered, and controlled, while promoting fundamental values of a market economy.[1375]

534.    The functions of the MCA include:

- Administration of the Companies Act, 1956, administration of other Acts, and simplifying the existing Companies Act, 1956 from time to time;

- Convergence of India standards with IFRS;

- Formulation of rules and regulations under various Acts administered by the Ministry;

- Implementation of Competition Act and facilitation of the working of Competition Commission;

- Implementation of e-Governance in MCA;

---

[1374]    _See_ Ministry of Corporate Affairs Manual, p. 2.

[1375]    _See_ Ministry of Corporate Affairs Manual, p. 2.

- Detection of irregularities in corporate functions through Early Warning Systems;

- Dissemination of official statistics related to Corporate sector;

- Undertaking investor education and awareness programs;

- Undertaking investigation of serious frauds through the Serious Fraud Investigation office; and,

- Administration of the ICLS Cadre and training through IICA.[1376]

535.    During my investigation, I reviewed many different MCA forms and their attachments on file with the MCA, which I obtained using the MCA's website[1377], as well as information regarding these forms as provided in the Companies Act of 1956.  Below, I describe the primary documents I relied upon in determining the ownership, transfers of ownership, and financial position of the Veluchamy Indian business interests subsequent to December 31, 2008.

536.    **Form 2**.  A Form 2 is a return filed with the Registrar in regards to a share allotment.[1378]  Whenever a company with share capital makes any allotment of its shares, the company, within thirty days, should file a Form 2 with the Registrar stating the number and nominal amount of the shares comprised in the allotment, the names, addresses and occupations of the allottees, and the amount, if any, paid or payable on each share.[1379]

537.    **Form 4C**.  A Form 4C is a return related to the buyback of securities.[1380]  A company may purchase its own shares, or other specified securities, out of its free reserves, the

---

[1376]    *See* Ministry of Corporate Affairs Manual, pp. 3-4.

[1377]    *See* the Ministry of Corporate Affairs website as maintained by the government of India at www.mca.gov.in.

[1378]    *See* Form 2.

[1379]    *See* Companies Act of 1956, Section 75(1).

[1380]    *See* Form 4C.

securities premium account, or the proceeds of any shares or other specified securities, subject to various requirements and limitations.[1381]  Within thirty days after the completion of a buyback under Section 77A of the Companies Act of 1956, a company is required to file with the Registrar a return containing certain information related to the buyback.[1382]

538.  **Form 5**.  A Form 5 is a form giving notice of the consolidation, division, or increase in share capital, or an increase in the number of members.[1383]  If a company has consolidated and divided its share capital into shares of larger amount than its existing shares, converted any shares into stock, re-converted any shares into stock, sub-divided its shares, redeemed any redeemable preference shares, or canceled any shares, the company must, within thirty days, give notice thereof to the Registrar specifying the shares consolidated, divided, converted, sub-divided, redeemed or cancelled, or the stock reconverted.[1384]  The Registrar then records the notice, and makes any alterations that may be necessary in the company's memorandum, articles, or both.[1385]  Also, when a company has increased its share capital beyond the authorized capital or the number of its members beyond the registered members, it must file with the Registrar a notice of the increase of capital or members within thirty days after the passing of the resolution authorizing the increase.[1386]  The notice should include particulars of the classes of shares affected and the conditions, if any, subject to which the new shares have been, or are to be, issued.[1387]  The Registrar then records the increase and makes any alterations which may be necessary in the company's memorandum, its articles, or both.[1388]

---

[1381]    *See* Companies Act of 1956, Section 77A(1)-(9).

[1382]    *See* Companies Act of 1956, Section 77A(10).

[1383]    *See* Form 5.

[1384]    *See* Companies Act of 1956, Section 95(1).

[1385]    *See* Companies Act of 1956, Section 95(2).

[1386]    *See* Companies Act of 1956, Section 97(1).

[1387]    *See* Companies Act of 1956, Section 97(2).

[1388]    *See* Companies Act of 1956, Section 97(1).

539. **Form 8**.   A Form 8 contains the particulars concerning the creation or modification of "charges" other than those related to debentures.[1389]   Every charge created by a company, in regards to security on the company's property, is void against the liquidator and any creditor of the company, unless the prescribed particulars of the charge, together with the instrument, if any, by which the charge is created or evidenced, are filed with the Registrar within thirty days after the date of its creation.[1390]   Whenever a company acquires any property which is subject to a charge, the company must register that charge with the Registrar.[1391]   For its part, the Registrar is required to keep a register containing the details of all charges requiring registration, which include, but are not limited to, information such as the date of the creation of the charge, the date of the acquisition of the property (if the charge was a charge existing on property acquired by the company), the amount secured by the charge, information regarding the property charged, and the persons entitled to the charge.[1392]   As evidence of registration of a charge with the Registrar, a certificate of registration is provided to the company.[1393]   Whenever the terms or conditions, or the extent of operation, of any charge registered with the Registrar are modified, the company is required to report the particulars of the modification to the Registrar.[1394]

540. **Form 17**.   A Form 17 contains information on the satisfaction of charges.[1395] Companies are required to give "intimation" to the Registrar of the payment or satisfaction, in full, of any charge that has been registered.[1396]   Upon receipt of such intimation, the Registrar

---

[1389]    *See* Form 8.

[1390]    *See* Companies Act of 1956, Section 125.

[1391]    *See* Companies Act of 1956, Section 127.

[1392]    *See* Companies Act of 1956, Section 130.

[1393]    *See* Companies Act of 1956, Section 132.

[1394]    *See* Companies Act of 1956, Section 135.

[1395]    *See* Form 17.

[1396]    *See* Companies Act of 1956, Section 138(1).

causes notice to be sent to the holder of the charge calling on that holder to show cause, if appropriate, of why payment or satisfaction should not be recorded by the Registrar. [1397]  If such cause is not shown, a memorandum of satisfaction is entered in the register of charges by the Registrar and the company is informed.[1398]  When the Registrar enters a memorandum of satisfaction of a mortgage in whole or part, he is required to furnish the company with a copy of the memorandum.[1399]

541.    **Form 20B**.  A Form 20B is an annual return filed by a company having share capital with the Registrar.[1400]  Companies are required to file a Form 20B within sixty days from the day of the annual general meeting.[1401]  The Form 20B is required to contain information as of the date of the annual general meeting regarding the company's registered office, the register of its members, the register of its debenture holders, its shares and debentures, its indebtedness, its members and debenture holders (past and present), and its directors, managing directors, managers and secretaries (past and present).[1402]

542.    **Form 22B**.  If a registered shareholder of a company does not hold the beneficial interest in that share, he or she is to make a declaration to the company specifying the name and other particulars of the person who holds the beneficial interest in such share.[1403]  When any person holding a beneficial interest in the share changes, the company must make a note in its register of members and file, within thirty days of the receipt of the declaration, a return in the

---

[1397]    *See* Companies Act of 1956, Section 138(2).

[1398]    *See* Companies Act of 1956, Section 138(3)-(4).

[1399]    *See* Companies Act of 1956, Section 140.

[1400]    *See* Form 20B.

[1401]    *See* Companies Act of 1956, Section 159.

[1402]    *See* Companies Act of 1956, Section 159.

[1403]    *See* Form 22B; Companies Act of 1956, Section 187C(1-3).

prescribed form with the Registrar.[1404]   Such filings, which are made pursuant to Section 187C(4) of the Companies Act of 1956, are made via Form 22B.[1405]

543.   **Form 23**.  Form 23 is a registration of resolutions and agreements.[1406]  A copy of every resolution or agreement must be signed by an officer and filed with the Registrar within thirty days of its passing.[1407]

544.   **Form 23AC**.  A Form 23AC is a form for filing the balance sheet and other documents with the Registrar.[1408]  Thirty days after the balance sheet and profit and loss account have been laid before a company at the annual general meeting, a copy of the balance sheet and profit and loss statement, signed by the managing director, manager, or secretary, should be filed with the Registrar.[1409]

545.   **Form 23B**.   A Form 23B contains information from the auditor to the Registrar.[1410]   Every auditor, within thirty days of the receipt of the intimation of his or her appointment, must inform the Registrar in writing that he or she has accepted, or refused to accept, the appointment.[1411]

546.   **Form 32**.  A Form 32 contains the particulars of the appointment of a Managing Director, directors, manager and secretary, and the changes among them, or the consent of a

---

[1404]      *See* Companies Act of 1956, Section 187C(4).

[1405]      *See* Companies Act of 1956, Section 187C(4).

[1406]      *See* Form 23.

[1407]      *See* Companies Act of 1956, Section 192(1).

[1408]      *See* Form 23AC.

[1409]      *See* Companies Act of 1956, Section 220.  Note that should an annual general meeting of the company not occur, filing must be filed with the Registrar within thirty days from the latest day on or before which that meeting should have been held in accordance with the Companies Act of 1956.

[1410]      *See* Form 23B.

[1411]      *See* Companies Act of 1956, Section 224(1A).

candidate to act as a Managing Director, director, secretary, or manager of a company.[1412]   The company shall, within prescribed periods, send to the Registrar a return containing information as required, including notification of any change among its directors, managing directors, managers, or secretaries, and specifying the date of the change.[1413]

547.   **Form 66**.   A Form 66 is a form for the submission of a compliance certificate with the Registrar.[1414]   Every company with a certain amount of prescribed paid-up share capital must have a whole time secretary, and where the Board of Directors comprises only two directors, neither of them are allowed to be the secretary of the company.[1415]

B.   *Transfers of Assets and Interests Involving Sri Parameswari Spinning Mills Private Limited*

i.   Background

548.   Sri Parameswari Spinning Mills ("SPSM") is located at 38, 39, 4A Great Cotton Road, Pandalgudi, Aruppukottai, Virudhunagar, Tamil Nadu.[1416]   This is the same address as Jaya Velu Spinning Mills, Jayaarun Spinning Mills, and Jayaanu Spinning Mills, each of which is discussed further below.   The company operates a spinning unit on 26 acres of land with an installed capacity of 52,272 spindles.[1417]   Revenues for the years ended March 31, 2010 and 2011 were 600,003,000 rupees and 994,102,000 rupees, or approximately $12.60 million and $21.67 million, respectively.[1418]

---

[1412]      *See* Form 32.

[1413]      *See* Form 32, Companies Act of 1956, Section 303(2).

[1414]      *See* Form 66.

[1415]      *See* Companies Act of 1956, Section 383A(1).

[1416]      *See* SPSM Schedule V – Part II Annual Return and attachments for the year ended March 31, 2004.

[1417]      *See* SPSM website accessed April 8, 2013.

[1418]      *See* SPSM Form 23AC-XBRL attachment for the year ended March 31, 2011.   USD conversion based on average conversation rates of .0210 and .0218 during 2010 and 2011, respectively, as reported by Oanda.com.

549.    SPSM registered with the MCA on July 1, 1980.[1419]  Mr. Veluchamy and Mrs. Veluchamy became Directors of the company on August 31, 1995 and July 5, 1996, respectively.[1420]  As of March 31, 2004, the company had 1,559,351 shares of issued capital, and 100 percent of the equity shares were held by Directors or relatives of Directors.[1421]  As of at least this time, Mr. and Mrs. Veluchamy jointly held 1,556,980 shares of SPSM, which had a par value of 100 rupees per share, or equivalent to 99.8 percent of the issued shares.[1422]

> ii.    <u>The personal financial statements and bankruptcy filings of the Veluchamys describe ownership of Sri Parameswari Spinning Mills between December 31, 2007 and August 16, 2011.  According to these documents, the Veluchamys' ownership interests in Sri Parameswari Spinning Mills declined 80 percent during this time.</u>

550.    Mr. and Mrs. Veluchamy's personal financial statement for the year ending December 31, 2007 valued their interest in SPSM at $10,000,000, and stated they owned 100 percent of the company.[1423]  On this personal financial statement, the Veluchamys affirmatively stated that the shares were not pledged or encumbered in any way.[1424]  As of December 31, 2008, the Veluchamys described no ownership of SPSM on their personal financial statement, although

---

[1419]    *See* SPSM Schedule V – Part II Annual Return and attachments for the year ended March 31, 2004.

[1420]    *See* SPSM Schedule V – Part II Annual Return and attachments for the year ended March 31, 2004.

[1421]    *See* SPSM Schedule V – Part II Annual Return and attachments for the years ended March 31, 2004.

[1422]    *See* SPSM Schedule V – Part II Annual Return and attachments for the year ended March 31, 2004.

[1423]    *See* BOA Exhibit 16 at BOA0002665.   When asked during a 341 Meeting of Creditors about their ownership interest in SPSM prior to December 31, 2007, Mr. and Mrs. Veluchamy declined to answer and asserted their Fifth Amendment Rights.  *See* 341 Meeting of Creditors Volume 2 dated May 14, 2012, pp. 366-368.  When asked about this reported $10 million value, Anu asserted her Fifth Amendment rights. *See* deposition of Anu Veluchamy dated February 26, 2013, p. 112.

[1424]    *See* BOA Exhibit 16 at BOA0002665.

MCA corporate filings at the time indicated no ownership change from 2007.[1425]    On their personal financial statements as of April 30, 2010, Mr. and Mrs. Veluchamy identified a fraction of previously represented ownership in SPSM, listing market value of their ownership interests as $165,000 and $135,000, respectively, and ownership interests of 11 percent and 9 percent of SPSM, respectively.[1426]    The shares were not identified as pledged or encumbered in any way on Mr. and Mrs. Veluchamy's April 30, 2010 personal financial statements.[1427]    In their initial bankruptcy disclosures filed on September 12, 2011, Mr. and Mrs. Veluchamy represented that they owned 11 percent and 9 percent, respectively, of SPSM, with "Unknown" as the current value.[1428]    Of note, the Veluchamys disclosed no transfers of SPSM stock during the last two years preceding their bankruptcy petition in their bankruptcy filing.[1429]    The table below summarizes the Veluchamys' historical reported ownership.[1430]

---

[1425]    *See* BOA Exhibit 17 at BOA002660-2662; SPSM Form 20B and attachments for the years ended March 31, 2007, 2008.  *See also* 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibits 36, 37.

[1426]    *See* BOA Exhibits 18, 35.

[1427]    *See* BOA Exhibits 18, 35.

[1428]    *See* Pethinaidu and Parameswari Veluchamy Schedule B – Personal Property filed September 12, 2011. Note on Schedule D of their original bankruptcy filing the Veluchamys stated they pledged their remaining shares to Arjun Parthasarathy, but not transferred as subsequent documents showed.  *See* Pethinaidu and Parameswari Veluchamy Schedule D – Creditors Holding Secured Claims filed August 16, 2011.

[1429]    *See* Pethinaidu and Parameswari Veluchamy Statement of Financial Affairs Part 10 filed September 12, 2011.  The Veluchamys confirmed that there were no transfers of SPSM within two years of their bankruptcy filing. *See* 341 Meeting of Creditors Volume 2 dated May 14, 2012, pp. 369-372.

[1430]    *See* BOA Exhibit 16 at BOA0002665; BOA Exhibit 17 at BOA002660-2662; BOA Exhibits 18, 35; Pethinaidu and Parameswari Veluchamy Schedule B – Personal Property filed September 12, 2011.

| | Shares or Share Percentage Owned As of: | | | |
|---|---|---|---|---|
| | 12/31/2007 [1] | 12/31/2008 [2] | 4/30/2010 [3] | 9/12/2011 [4] |
| **Mr. Veluchamy** | 100% (jointly) | Omitted | 11% | 11% |
| **Mrs. Veluchamy** | 100% (jointly) | Omitted | 9% | 9% |

[1] BOA Exhibit 16 at BOA0002665
[2] BOA Exhibit 17 at BOA002660-2662
[3] BOA Exhibits 18, 35
[4] Pethinaidu and Parameswari Veluchamy Schedule B - Personal Property
   filed 9/12/2011

iii.   <u>Contemporaneous MCA filings show that beginning in October 2009 and continuing through December 2010 Mr. and Mrs. Veluchamy transferred most of their shares in SPSM to their children and other relatives in India.</u>

551.   The SPSM Form 5 filed on September 8, 2009 increased SPSM's authorized capital from 1,850,000 shares to 2,350,000 shares as of August 29, 2009.[1431]   According to SPSM's Form 20B for the fiscal year ending March 31, 2010, Mr. and Mrs. Veluchamy transferred the entirety of their (to that point) jointly held shares to four different parties individually: 171,268 shares to Mr. Veluchamy, 140,128 shares to Mrs. Veluchamy, and 622,792 shares each to Arun and Anu on October 12, 2009.[1432]   I have observed no documents or testimony evidencing that consideration was provided in exchange for these share transfers. When asked if the Veluchamys transferred approximately 1,250,000 shares of SPSM to Arun and Anu on October 12, 2009, Arun and Anu both asserted their Fifth Amendment rights.[1433] When asked if his parents transferred their interest in SPSM to him and Anu (i) to hinder his parents' creditors, (ii) to keep all property and money of his parents in his family, or (iii) to

---

[1431]   *See* SPSM Form 5 and attachments dated August 29, 2009.

[1432]   *See* SPSM Form 20B and attachments for the year ended March 31, 2010.  *See also* 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibit 39A.

[1433]   *See* deposition of Anu Veluchamy dated February 26, 2013, p. 110; deposition of Arun Veluchamy dated March 27, 2013, pp. 260-261.

defraud his parents' creditors; if he and his sister were involved in planning and executing these transfers; and, if he and his sister did not pay equivalent value for the shares, Arun asserted his Fifth Amendment rights.[1434]   Anu asserted her Fifth Amendment rights when asked if Mr. and Mrs. Veluchamy transferred SPSM shares to Arun and Anu in October 2009 to get them away from creditors.[1435]   She also asserted her Fifth Amendment rights when asked if she or Arun paid fair value for the SPSM shares.[1436]   When questioned regarding when she received these shares, if she knew she was holding them subject to her parents' discretion, Anu asserted her Fifth Amendment rights.[1437]   The table below summarizes the October 12, 2009 activity.

| | |
|---|---:|
| **SPSM shares jointly held by Mr. and Mrs. Veluchamy prior to 10/12/2009 per contemporaneous MCA filings:** | 1,556,980 |
| **SPSM shares transferred on 10/12/2009 to individuals per contemporaneous MCA filings:** | |
| Mr. Veluchamy | 171,268 |
| Mrs. Veluchamy | 140,128 |
| Arun | 622,792 |
| Anu | 622,792 |
| | 1,556,980 |

552.   Subsequently, on November 16, 2009, the SPSM Form 20B for the year-ended March 31, 2010 showed Arun and Anu were appointed as Directors of the company.[1438]   On December 6, 2010, approximately one year later and weeks before the December 30, 2010 judgments against Mr. and Mrs. Veluchamy, the SPSM Form 20B for the year-ended March 31, 2010 showed Arun transferred his 622,792 shares of SPSM to Mr. Veluchamy and Anu

---

[1434]   *See* deposition of Arun Veluchamy dated March 27, 2013, pp. 155-159.

[1435]   *See* deposition of Anu Veluchamy dated February 26, 2013, p. 110.

[1436]   *See* deposition of Anu Veluchamy dated February 26, 2013, p. 110.

[1437]   *See* deposition of Anu Veluchamy dated February 26, 2013, p. 111.

[1438]   *See* SPSM Form 20B and attachments for the year ended March 31, 2010.   *See also* 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibit 39A.

transferred her 622,792 shares of SPSM to Mrs. Veluchamy.[1439]  Then, on December 9, 2010, the SPSM Form 20B for the year-ended March 31, 2011 showed Mr. and Mrs. Veluchamy each transferred 622,792 shares of SPSM to Mrs. R. Renuga Devi ("Renugadevi"), Mrs. Veluchamy's sister.[1440]  I observed no documents or testimony evidencing that consideration was provided in exchange for these share transfers.  Arun and Anu asserted their Fifth Amendment rights when asked if they transferred the SPSM shares back to their parents, which they then transferred to Renugadevi.[1441]  When asked if the purpose of these back and forth SPSM share transfers was to hinder and defraud Mr. and Mrs. Veluchamy's creditors, Arun and Anu asserted their Fifth Amendment rights.[1442]  Anu asserted her Fifth Amendment rights when asked if the purpose of these SPSM shares transfers was to hide the fraudulent transfers of her parents' property to her and her Indian relatives.[1443]  When asked if she personally participated in a fraudulent transfer scheme by first taking shares from her parents and then transferring them back, Anu also asserted her Fifth Amendment rights.[1444]  After these transfers, Mr. Veluchamy continued to own 171,268 shares, and Mrs. Veluchamy continued to own 140,128 shares, per contemporaneous MCA

---

[1439]    See SPSM Form 20B and attachments for the year ended March 31, 2011.  See also 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibit 40A.  During his citation examination on May 26, 2011, Arun stated that he and Anu currently owned shares in Mr. and Mrs. Veluchamy's spinning mills businesses.  See deposition of Arun Veluchamy dated May 26, 2011, pp. 311-312, 314-315.

[1440]    See SPSM Form 20B and attachments for the year ended March 31, 2011.  See also 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibit 40A.

[1441]    See deposition of Anu Veluchamy dated February 26, 2013, p. 111; deposition of Arun Veluchamy dated March 27, 2013, p. 260-262.

[1442]    See deposition of Anu Veluchamy dated February 26, 2013, p. 111; deposition of Arun Veluchamy dated March 27, 2013, p. 262.

[1443]    See deposition of Anu Veluchamy dated February 26, 2013, p. 111.

[1444]    See deposition of Anu Veluchamy dated February 26, 2013, pp. 111-112.

records and consistent with their personal financial statements dated April 30, 2010.[1445]   The table below summarizes this December 2010 activity.

| | Per Contemporaneous MCA Documents, SPSM Shares Owned As of: | | |
|---|---|---|---|
| | **12/5/2010** | **12/6/2010** | **12/9/2010** |
| Mr. Veluchamy | 171,268 | 794,060 | 171,268 |
| Mrs. Veluchamy | 140,128 | 762,920 | 140,128 |
| Arun | 622,792 | - | - |
| Anu | 622,792 | - | - |
| Renugadevi | 55 | 55 | 1,245,639 |
| Total | 1,557,035 | 1,557,035 | 1,557,035 |

553.   The SPSM Form 5 filed on June 7, 2011 increased SPSM's authorized capital from 2,350,000 shares to 3,500,000 shares as of May 9, 2011.[1446]

iv.   <u>Both cash activity and contemporaneous MCA filings indicate the Veluchamys' children purchased additional, newly issued shares of SPSM. These shares appear to have been acquired, at least in part, using indemnity monies extracted from Oakbrook Financial.</u>

554.   As discussed in paragraphs 507 to 508 above, on March 1, 2011, Oakbrook Financial wired $2,000,000 to Arun's Canara Bank account in India.[1447]   Arun received these funds into his Canara Bank account on March 10, 2011, via a deposit of 90,008,874 rupees from a Canara Bank FCNR account ending in 1130.[1448]   During citation examinations, Arun testified that this transfer from Oakbrook Financial was for repayment of a loan he had made to the company in 2010 with indemnity monies, and that he wired the funds to India for the purported

---

[1445]   *See* BOA Exhibits 18, 35; SPSM Form 20B and attachments for the year ended March 31, 2011.  *See also* 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibit 40A.

[1446]   *See* SPSM Form 5 and attachments dated May 9, 2011.

[1447]   *See* WSB000145; OBF000611-613.

[1448]   *See* AKV2022.

acquisition of raw materials by the Veluchamy family spinning mills.[1449]  Four days later, on March 14, 2011, Arun transferred 90,000,000 rupees, or about $2 million, from his Canara Bank account to Jaya Velu Spinning Mill ("JVSM").[1450]  When asked about this transfer to JVSM to purchase raw materials, and if the transfer was actually performed to get funds away from his parents' creditors, Arun asserted his Fifth Amendment rights.[1451]  A letter dated May 28, 2011 addressed to Bradford Dooley stated that Arun transferred 90 million rupees from his Canara Bank account to JVSM, which was recorded as a share capital advance, or an investment in the company.[1452]  On August 2, 2011, Arun received 49,000,000 rupees, or about $1.1 million, from a Canara Bank account ending in 2046 into his Canara Bank account.[1453]  That same day, he transferred 49,000,000 rupees from that account to JVSM.[1454]

555.    On January 24, 2012, Arun received 49,000,000 rupees, or about $960,000 back from JVSM.[1455]  On that same day, Arun transferred these 49,000,000 rupees to SPSM; based on the SPSM Form 2 filed March 31, 2012 it appears these funds were used to acquire 490,000 shares of SPSM with a par value of 100 rupees each.[1456]  Per the Form 2, on March 30, 2012, SPSM issued 490,000 shares (par value 100 rupees) to Arun.[1457]  When asked about this series of cash transfers to acquire stock in SPSM, Arun asserted his Fifth Amendment rights.[1458]  The table below summarizes this activity.[1459]

---

[1449]    *See* deposition of Arun Veluchamy, dated May 26, 2011, pp. 343-345.

[1450]    *See* AKV2022, ARV000852-853.

[1451]    *See* deposition of Arun Veluchamy dated March 27, 2013, pp. 220-221.

[1452]    *See* AKV001922-1923.

[1453]    *See* AKVC-AP000011.

[1454]    *See* AKVC-AP000011.

[1455]    *See* AKVC-AP000016.

[1456]    *See* AKVC-AP000016; SPSM Form 2 and attachments dated March 30, 2012.

[1457]    *See* SPSM Form 2 and attachments dated March 30, 2012.

[1458]    *See* deposition of Arun Veluchamy dated March 27, 2013, pp. 232-234.

| Date | Description | Withdrawal (INR) | Deposit (INR) |
|---|---|---|---|
| 3/10/2011 | Wire in from Oakbrook Financial | | 90,008,874.00 |
| 3/14/2011 | Transfer to JVSM | (90,000,000.00) | |
| 8/2/2011 | Deposit from an Unknown Canara Bank account | | 49,000,000.00 |
| 8/2/2011 | Transfer to JVSM | (49,000,000.00) | |
| 1/24/2012 | Transfer from JVSM | | 49,000,000.00 |
| 1/24/2012 | Transfer to SPSM | (49,000,000.00) | |

556.    Later, on October 20, 2012, a SPSM Form 22B filed on November 22, 2012 showed that Arun's 490,000 shares were transferred to V. Prem Subburaj, Trustee of the Arunkumar Veluchamy Family Trust for which Arun was the beneficiary.[1460]  When asked about this transfer during deposition, and if he performed the transfer to hide assets he received from his parents, Arun asserted his Fifth Amendment rights.[1461]   Arun also asserted his Fifth Amendment rights when asked if he owned the beneficial interest in the Arunkumar Veluchamy Family Trust.[1462]

557.    Between February and May 2011, Anu also received a series of deposits into her Canara Bank account from both the United States, (which were sourced from what were originally indemnity monies) and Veluchamy Indian business interests, and which she—like her brother—used to acquire shares in SPSM.  In particular, on February 1, 2011, Anu received 60,000 rupees, or about $1,300, from JVSM into her Canara Bank account.[1463]  Then, on April 6, 2011, Anu received 10,000,000 rupees, or about $223,000, also from JVSM into her Canara

---

[1459]    The abbreviation for Indian rupees is INR, and INR will, at times, be used herein to refer to this currency.

[1460]    *See* SPSM Form 22B and attachments dated October 20, 2012.  This SPSM Form 22B and its attachments were filed on November 22, 2012.

[1461]    *See* deposition of Arun Veluchamy dated March 27, 2013, pp. 130-132.

[1462]    *See* deposition of Arun Veluchamy dated March 27, 2013, p. 132.

[1463]    *See* ARV000852-853, 907.

Bank account.[1464]   Lastly, between January 25, 2011, and March 21, 2011, Oakbrook Financial made payments (as discussed in paragraphs 497 to 505 above) totaling approximately $1.2 million to Anu.[1465]   On March 22, 2011 and May 10, 2011, Anu transferred $750,000 and $995,000, respectively, from her domestic Citibank accounts to her Canara Bank account,[1466] and testified during citation examinations that a portion of these funds were sourced from indemnity monies.[1467]   Her Canara Bank statement showed that she received a deposit of 33,535,132 rupees, or about $750,000, on May 6, 2011 from an FCNR account.[1468]   Five days later, on May 11, 2011, Anu received an additional 44,385,773 rupees, or approximately $995,000, into her Canara Bank account which appears to have been sourced from her U.S. Citibank account.[1469] That same day, she transferred 88,000,000 rupees, or about $1.95 million, from her Canara Bank account to SPSM.[1470]   Anu testified she transferred these funds to SPSM to purchase raw materials.[1471]   A letter dated May 28, 2011 addressed to Bradford Dooley stated that Anu

---

[1464]   *See* ARV000852-853, 909.

[1465]   *See* OBF000648, 650-653, and 659-662.

[1466]   *See* ARV000841-844 at 842, ARV000854-858 at ARV000857, and ARV000910.  The transfer of $749,975 was initiated from Anu's domestic Citibank account on March 22, 2011 and was received in her Canara account as an FCNR deposit on May 6, 2011. It appears that a number of wires to Canara Bank from the Veluchamys and their children may have passed through an unidentified Foreign Currency Non-Resident ("FCNR") account prior to deposit. I have not been provided with account statements regarding any FCNR accounts held by the Veluchamys or their children.

[1467]   *See* deposition of Anu Veluchamy dated June 27, 2011, p. 460.

[1468]   *See* deposition of Anu Veluchamy dated June 27, 2011 pp. 451-454; ARV000910; ARV000842, CIT00449, CIT-AP000117.

[1469]   *See* ARV000910, ARV000857, CIT-AP000001, CIT00589.

[1470]   *See* ARV000910, ARV000831.

[1471]   *See* deposition of Anu Veluchamy dated May 10, 2011 pp. 20-26.

transferred 88 million rupees from her Canara Bank account to SPSM, which was recorded as a share capital advance, or an investment in the company.[1472]

558.    On November 3, 2011, Anu received 88,000,000 rupees back from SPSM.[1473] The next day, on November 4, 2011, she transferred 73,000,000 rupees, or about $1.47 million, back to SPSM.[1474]  Based on the SPSM Form 2 dated April 27, 2012, it appears Anu transferred these funds, which were sourced in part from indemnity monies, back to SPSM to acquire 730,000 shares (100 rupee par value) of SPSM.[1475]  On April 27, 2012, this same Form 2 showed that SPSM issued these 730,000 shares to Anu.[1476]  When asked about the share issuances during her deposition, Anu asserted her Fifth Amendment rights.[1477]  The table below summarizes this activity.

| Date | Description | Withdrawal (INR) | Deposit (INR) |
|------|-------------|------------------|---------------|
| 2/1/2011 | Transfer from JVSM | | 60,000.00 |
| 4/6/2011 | Transfer from JVSM | | 10,000,000.00 |
| 5/6/2011 | Transfer from U.S. Citibank | | 33,535,132.00 |
| 5/11/2011 | Transfer from U.S. Citibank | | 44,385,773.00 |
| 5/11/2011 | Transfer to SPSM | (88,000,000.00) | |
| 11/3/2011 | Transfer from SPSM | | 88,000,000.00 |
| 11/4/2011 | Transfer to SPSM | (73,000,000.00) | |

559.    As with her brother's shares in SPSM, SPSM's Form 22B filed on November 22, 2012 showed that on October 20, 2012, Anu's 730,000 shares were transferred to V. Prem Subburaj, Trustee of the Anu Radha Veluchamy Family Trust for which Anu was the

---

[1472]    *See* ARV000822-823.

[1473]    *See* ARV-AP01261.

[1474]    *See* ARV-AP01261.

[1475]    *See* SPSM Form 2 and attachments dated April 27, 2012.

[1476]    *See* SPSM Form 2 and attachments dated April 27, 2012.

[1477]    *See* deposition of Anu Veluchamy dated February 26, 2013, pp. 83-84.

beneficiary.[1478]   When asked whether she was the beneficiary of the Anu Radha Veluchamy Family Trust during deposition, Anu asserted her Fifth Amendment rights.[1479]

560.   In SPSM's Form 32 dated December 22, 2011 and filed on May 8, 2012, Mr. and Mrs. Veluchamy resigned as Directors of SPSM.[1480]   In SPSM's Form 32 dated May 31, 2012, and filed on July 4, 2012, Arun and Anu resigned as Directors of SPSM.[1481]   The SPSM website, accessed on April 8, 2013, still described Mr. Veluchamy as Chairman and promoter of SPSM[1482, 1483]

> v.   Contrary to their April 30, 2010 personal financial statements, the Veluchamys allege that their remaining shares in SPSM were pledged to their nephew, Arjun Parthasarathy, in May or June 2009.

---

[1478]   *See* SPSM Form 22B and attachments dated October 20, 2012.  This SPSM Form 22B and its attachments were filed on November 22, 2012.

[1479]   *See* deposition of Anu Veluchamy dated February 26, 2013, pp. 85-86.

[1480]   *See* SPSM Form 32 and attachments dated December 22, 2011.

[1481]   *See* SPSM Form 32 and attachments dated May 31, 2012.

[1482]   *See* SPSM website, http://www.wix.com/spsmill/jvsm, accessed April 8, 2013.  When asked about the content of this website during a 341 Meeting of Creditors, Mr. and Mrs. Veluchamy stated they had never seen this website before.  *See* 341 Meeting of Creditors Volume 5 dated June 7, 2012, pp. 938-942.

[1483]   As of the date of this report, according to MCA filings, SPSM's current remaining directors are Gopalakrishnan Rajaram, Kitchanan Subbarajulu, and Dinakaran Gopal.  *See* SPSM Form 20B for the year ended March 31, 2011 filed June 22, 2011, Form 32 dated July 23, 2012 and filed July 25, 2012, and Form 32 dated December 15, 2012 and filed January 4, 2013.  At the 341 Meeting of Creditors on May 24, 2012, Mr. Veluchamy acknowledged that Gopalakrishnan Rajaram is his brother-in-law (*See* 341 Meeting of Creditors Volume 3 dated May 24, 2012, pp. 489-490).  On January 4, 2013, Gopalsamy Ravi and Ramasamy Naicker Renugadevi were appointed as Directors of SPSM.  *See* SPSM Form 32 and attachments dated December 15, 2012 and filed on January 4, 2013.

561.    As of at least December 9, 2010, contemporaneous MCA filings show that Mr. and Mrs. Veluchamy still held 171,268 shares and 140,128 shares, respectively, of SPSM.[1484] Consistent with this observation, Mr. Veluchamy confirmed that he was a minority shareholder in SPSM during his first citation examination on April 7, 2011.[1485]   Arun also confirmed this statement during his citation examination on May 26, 2011, stating his parents had shares in SPSM and still owned those shares.[1486]   During his citation examination, Rajiv Parthasarathy stated that the Veluchamys "control[led]" companies in India, including SPSM.[1487]   As of April 8, 2013, the SPSM website still described Mr. Veluchamy as Chairman and promoter of SPSM.[1488]

562.    During his citation examination on July 19, 2011, Mr. Veluchamy testified that he and his wife's shares in SPSM were pledged to Arjun Parthasarathy in exchange for an approximately $1 million loan to SPSM.[1489]   This share pledge was in addition to a pledge of all shares the Veluchamys owned in JVSM and VCT India, as discussed in paragraphs 593 to 649 below.   Per Mr. Veluchamy, the documents purporting to show this share pledge were in Arjun

---

[1484]    *See* SPSM Form 20B and attachments for the year ended March 31, 2011.  *See also* 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibit 40A.

[1485]    *See* deposition of Pethinaidu Veluchamy dated April 7, 2011, pp. 66-67.

[1486]    *See* deposition of Arun Veluchamy dated May 26, 2011, pp. 311-312, 314-315.

[1487]    *See* deposition of Rajiv Parthasarathy dated April 15, 2011, pp. 193-194.

[1488]    *See* SPSM website, http://www.wix.com/spsmill/jvsm, accessed April 8, 2013.

[1489]    *See* deposition of Pethinaidu Veluchamy dated July 19, 2011, pp. 916-920; BOA Exhibits 18, 35; 341 Meeting of Creditors Volume 2 dated May 14, 2012, pp. 241-245.  As discussed in more detail in paragraph 664 below, this loan from Arjun Parthasarathy was purportedly extended to SPSM [beginning a series of transfers to the United States and subsequently back to India].  The SPSM Form 23AC for the year ended March 31, 2011 described an unsecured loan from Arjun Parthasarathy in the amount of 48 million rupees ($1.07 million) as of March 31, 2010.  As of March 31, 2011, the unsecured loan balance due to Arjun Parthasarathy had been reduced to 16 million rupees, or approximately $352,000.  *See* SPSM Form 23AC and attachments for the year ended March 31, 2011.

Parthasarathy's possession and created sometime in May or June of 2009.[1490]   However, the Veluchamys' personal financial statements as of April 30, 2010 identified no such pledge or encumbrance.[1491]

563.    The Veluchamys produced two Limited Recourse Guaranty and Collateral Pledge Agreements which purported to show that they pledged their shares in SPSM to Arjun Parthasarathy "as of" June 3, 2009.[1492]   These agreements purported to show that Mr. and Mrs. Veluchamy pledged their shares individually to Arjun Parthasarathy; however, at this point in time and until October 12, 2009 the Veluchamys still owned their shares in SPSM jointly.[1493] When asked about these documents during a 341 Meeting of Creditors on July 19, 2012, Mr. Veluchamy still claimed they were drafted around June 3, 2009, the date of the documents and when the funds were allegedly transferred.[1494]   However, the individual pledge references— which predate the October 12, 2009 transfers which established Mr. and Mrs. Veluchamy's individual holdings—indicate that these guaranty and pledge documents were drafted October 12, 2009 or later.

vi.    Subsequent to their bankruptcy filing, the Veluchamys produced share transfer records that purport to show the transfer of their remaining SPSM shares to Arjun Parthasarathy in June 2009.  These share transfer records

---

[1490]    *See* deposition of Pethinaidu Veluchamy dated July 19, 2011, pp. 916-920; 341 Meeting of Creditors Volume 2 dated May 14, 2012, pp. 241-245.

[1491]    *See* BOA Exhibits 18, 35.

[1492]    *See* 341 Meeting of Creditors Volume 7 dated July 19, 2012 Exhibits 93, 94 at VELUBK002528-2537, 3519-3528.

[1493]    *See* 341 Meeting of Creditors Volume 7 dated July 19, 2012 Exhibits 93, 94 at VELUBK002528-2537, 3519-3528; SPSM Form 20B and attachments for the years ended March 31, 2009 and 2010.  *See also* 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibits 38, 39A.  When asked about whether these shares were owned jointly or separately, Mr. Veluchamy was unable to give a clear answer.  *See* 341 Meeting of Creditors Volume 7 dated July 19, 2012, pp. 1389-1398.

[1494]    *See* 341 Meeting of Creditors Volume 7 dated July 19, 2012, pp. 1371-1373.

contradicted the Veluchamys' personal financial statements dated April 30,
2010, the Veluchamys' bankruptcy schedules, the Veluchamys' testimony,
and contemporaneous MCA filings.

564.    SPSM Form 7B Share Transfer Forms produced by the Veluchamys on May 11,
2012 purported to show that Mr. Veluchamy transferred 171,268 shares of SPSM for no
consideration to Arjun Parthasarathy on June 3, 2009, and that Mrs. Veluchamy transferred
140,128 shares of SPSM for no consideration to Arjun Parthasarathy on June 3, 2009.[1495]   When
asked about these share transfer forms during the 341 Meeting of Creditors on May 14, 2012,
Mr. and Mrs. Veluchamy initially stated they did not remember when they signed the transfer
forms but then claimed they signed the blank form at the time of pledging in the presence of a
notary on June 3, 2009.[1496]

565.    These Form 7B Share Transfer Forms were contrary to previous documents
produced, previous testimony, bankruptcy filings, and documents contemporaneous documents
on file with the MCA.   First, these documents purported to show that Mr. and Mrs. Veluchamy's
shares were transferred to Arjun Parthasarathy on June 3, 2009, rather than outright owned by
Mr. and Mrs. Veluchamy or pledged to Arjun Parthasarathy, as Mr. Veluchamy previously
stated.[1497]   Second, the Veluchamys' personal financial statements as of April 30, 2010 stated
that Mr. and Mrs. Veluchamy still owned these shares as of at least April 30, 2010 and noted no
encumbrance of the shares.[1498]   Third, the Veluchamys' bankruptcy schedules also stated the
shares were pledged—not transferred—to Arjun Parthasarathy as of August 2011.[1499]   Only in

---

[1495]    *See* 341 Meeting of Creditors Volume 2 dated May 14, 2012, Exhibit 8 at D00016-17.

[1496]    *See* 341 Meeting of Creditors Volume 2 dated May 14, 2012, pp. 402-404.

[1497]    *See* deposition of Pethinaidu Veluchamy dated July 19, 2011, pp. 916-920; *See* 341 Meeting of Creditors
Volume 2 dated May 14, 2012, pp. 241-245.

[1498]    *See* BOA Exhibits 18, 35.

[1499]    *See* Pethinaidu and Parameswari Veluchamy Schedule B – Personal Property filed September 12, 2011;
Pethinaidu and Parameswari Veluchamy Schedule D – Creditors Holding Secured Claims filed August 16, 2011.
The total amount of claim, without deducting the value of the collateral, was $370,000 and $300,000 for Mr. and

the second 341 Meeting of Creditors on May 14, 2012 did Mr. Veluchamy state the shares had been transferred to Arjun Parthasarathy, but even then he contradicted the document and claimed the shares were transferred after the bankruptcy filing.[1500]  To the extent the revised returns filed on June 18, 2012 (discussed in more detail in paragraphs 573-574 below) are relevant, they also did not reflect this alleged June 2009 transfer.[1501]

566.    In addition to the above inconsistencies, the documents themselves contain information that is inconsistent with their purported timing.  In particular, the Form 7B Share Transfer Forms produced on May 11, 2012 indicated that the "date of presentation to the prescribed authority" or Registrar was May 21, 2009—a date which predates the June 3, 2009 notary date.[1502]   Moreover, the Form 7B Share Transfer Forms describe transfers of shares individually by Mr. and Mrs. Veluchamy of 171,268 and 140,128, respectively.[1503]  However, prior to October 12, 2009, the Veluchamys did not own shares of JVSM individually; rather, they owned 1,556,980 shares of SPSM jointly as discussed in paragraph 551 above.  Lastly, Mr. Veluchamy testified that this document was blank when executed and notarized, and that it reflected an "option" to transfer that Arjun Parthasarathy had only exercised after the August 16, 2011 filing.[1504]  As an initial matter, that a blank document was notarized raises questions about the reliability of the information within the document.  It is further unclear how a transfer form purportedly presented to the Registrar on May 21, 2009 documents a post-August 2011 transfer.

---

Mrs. Veluchamy, respectively.  The total collateral associated with these claims contained shares of SPSM, JVSM, and VCT India.

[1500]    See 341 Meeting of Creditors Volume 2 dated May 14, 2012, pp. 245-249.

[1501]    See SPSM Revised Form 20B and attachments for the years ended March 31, 2009, 2010, 2011.

[1502]    See D00016-7.

[1503]    See D00016-7.

[1504]    See 341 Meeting of Creditors Volume 2 dated May 14, 2012, pp. 244-251, 402-404.

vii.     The Veluchamys allege their remaining shares in SPSM were transferred to the Veluchamy's nephew, Arjun Parthasarathy, subsequent to the automatic stay.

567.     As of June 16, 2011, contemporaneous MCA filings show that Mr. and Mrs. Veluchamy continued to hold 171,268 shares and 140,128 shares, respectively, of SPSM,[1505] and the Veluchamys reported in their bankruptcy filings that they held 171,268 shares and 140,128 shares, respectively, of SPSM.[1506]  During the second 341 Meeting of Creditors on May 12, 2012 related to Mr. and Mrs. Veluchamy's personal bankruptcy, Mr. Veluchamy testified that the general manager of SPSM and JVSM had called and informed him that he was no longer a shareholder or Director of SPSM.[1507]  Mr. Veluchamy stated that the shares purportedly pledged to Arjun Parthasarathy in May or June of 2009 were transferred to Arjun who exercised an option to put the shares in his name after the Veluchamys filed for bankruptcy.[1508]

viii.    After their bankruptcy filing in August 2011, the Veluchamys asserted that they transferred the majority of their shares to family in India in May 2008. This assertion is contradicted by contemporaneous MCA filings.

568.     After filing for bankruptcy on August 16, 2011, Mr. and Mrs. Veluchamy were asked about their ownership interest in SPSM during several 341 Meetings of Creditors.  During the first 341 Meeting of Creditors on October 11, 2011, Mr. Veluchamy testified that he currently owned 11 percent of SPSM, and his wife owned 9 percent.[1509]  He stated he previously owned a larger percentage of the company, but that he had maintained this ownership percentage since 2008—an assertion that was inconsistent with both historical and current MCA records at

---

[1505]     *See* SPSM Form 20B and attachments for the year ended March 31, 2011.  *See also* 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibit 40A.

[1506]     *See* Pethinaidu and Parameswari Veluchamy Schedule B filed September 12, 2011.

[1507]     *See* 341 Meeting of Creditors Volume 2 dated May 14, 2012, pp. 245-246.

[1508]     *See* 341 Meeting of Creditors Volume 2 dated May 14, 2012, pp. 246-249.

[1509]     *See* 341 Meeting of Creditors Volume 1 dated October 11, 2011, pp. 110-111.

that time.[1510]  Per the contemporaneous MCA filings, Mr. and Mrs. Veluchamy did not transfer any shares to anyone until October 2009 (when they transferred shares to their children), and new shares were not issued to anyone until March 2012.[1511]

569.    On November 17, 2011, the Veluchamys produced a Form 7B Share Transfer Form, which purported to show that Mr. and Mrs. Veluchamy jointly transferred 1,245,584 shares in SPSM to Renugadevi, Rajaram's wife, on May 1, 2008, with the consideration amount left blank.[1512]  Contrary to prior testimony that Rajaram diluted Mr. Veluchamy's shares in SPSM by putting money into the mill,[1513] this document purported to show that Mr. and Mrs. Veluchamy jointly transferred their shares to Renugadevi in May 2008.[1514]

---

[1510]    *See* 341 Meeting of Creditors Volume 1 dated October 11, 2011, pp. 110-113. Mr. Veluchamy initially stated that he had diluted his share of stock in 2008 when Rajaram put more than $1 million into the business, and stated he did not have records of that transaction, although Rajaram might.  *See* 341 Meeting of Creditors Volume 1 dated October 11, 2011, pp. 129-130.  At the next 341 Meeting of Creditors on May 14, 2012, Mr. Veluchamy stated that he did not receive any money or value when his number of shares was reduced in 2008; according to Mr. Veluchamy, Rajaram, Mr. Veluchamy's brother-in-law, was putting money into the mill, so Rajaram received more shares.  He believed Rajaram put about $2.5 million into SPSM to acquire 70 percent of the stock.  Mr. Veluchamy stated he did not do a valuation of the stock at the time because he purportedly "just wanted to get out of business in India."  *See* 341 Meeting of Creditors Volume 2 dated May 14, 2012, pp. 371-372.  Documents on file with the MCA at the time did not support this testimony: they showed Rajaram was never transferred or issued additional shares in SPSM.  *See* SPSM Form 20B and attachments for the years ended March 31, 2008, 2009, 2010, 2011; *see* SPSM Form 2 and attachments dated March 30, 2012.  *See also* 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibits 37, 38, 39A, 40A.

[1511]    *See* SPSM Form 20B and attachments for the years ended March 31, 2010, 2011; *see* SPSM Form 2 and attachments dated March 30, 2012.  *See also* 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibits 39A, 40A.

[1512]    *See* 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibit 7 at VELUBK006871-6874.

[1513]    *See* 341 Meeting of Creditors Volume 1 dated October 11, 2011, pp. 110-113.

[1514]    *See* footnote 1510.  *Also see* 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibit 7 at VELUBK006871-6874; 341 Meeting of Creditors Volume 1 dated October 11, 2011, pp. 110-113.

570.    At the 341 Meeting of Creditors on May 30, 2012, the Veluchamys were asked about this share transfer form.  Mr. and Mrs. Veluchamy both testified that they transferred the vast majority of their ownership in SPSM to Renugadevi (rather than Rajaram) in May 2008.[1515] The Veluchamys were then shown the SPSM Form 20B on file with the MCA dated September 24, 2008, which showed that as of that date they still owned approximately 99 percent of the company.[1516]  The Veluchamys disputed that fact and stated as of September 2008 they did not still own approximately 99 percent of SPSM.[1517]  Likewise, when shown the SPSM Form 20B dated September 24, 2009, which still showed they owned approximately 99 percent of SPSM, the Veluchamys maintained they transferred their shares in 2008.[1518]  Mr. Veluchamy asserted that they sold their shares in May 2008, that they gave "them" the share certificates, and that it was up to "them" when they wanted to transfer the shares.[1519]

571.    At the same 341 Meeting of Creditors on May 30, 2012, the Veluchamys were shown SPSM's Form 20B dated September 20, 2010, which also did not show that any transfer to Renugadevi had occurred; the Veluchamys maintained that at this point Renugadevi should have owned the more than 1.2 million shares transferred to her in 2008[1520] and eventually asserted this SPSM Form 20B was wrong.[1521]  The Veluchamys were then provided additional current MCA filings, which detailed the described October 12, 2009 share transfers to their

---

[1515]    *See* 341 Meeting of Creditors Volume 4 dated May 30, 2012, pp. 720-723.

[1516]    *See* 341 Meeting of Creditors Volume 4 dated May 30, 2012, pp. 743-747, Exhibit 37.

[1517]    *See* 341 Meeting of Creditors Volume 4 dated May 30, 2012, p. 749.

[1518]    *See* 341 Meeting of Creditors Volume 4 dated May 30, 2012, pp. 750-754, Exhibit 38.

[1519]    *See* 341 Meeting of Creditors Volume 4 dated May 30, 2012, pp. 748, 781.  Mr. Veluchamy then stated that Rajaram guaranteed the loan for SPSM and JVSM because Rajaram was managing the mill and putting in whatever money was needed to run the company.  *See* 341 Meeting of Creditors Volume 4 dated May 30, 2012, pp. 782-785.

[1520]    *See* 341 Meeting of Creditors Volume 4 dated May 30, 2012, pp. 755-761, Exhibit 39.

[1521]    *See* 341 Meeting of Creditors Volume 4 dated May 30, 2012, p. 831.

children.[1522]  This document detailed the previously described transfer of 622,792 shares to each of Arun and Anu in October 2009 – the exact amount the Veluchamys said they had transferred to Renugadevi in May 2008.[1523]  Mr. Veluchamy stated he did not recall making this transfer, and Mrs. Veluchamy asserted that the transfer did not happen.[1524]

572.    Subsequently, the Veluchamys were presented with another document which detailed the December 2010 share transfers back to them from their children.[1525]  In particular, this document showed Arun and Anu transferring 622,792 shares each back to Mr. and Mrs. Veluchamy in December 2010.[1526]  Mr. and Mrs. Veluchamy stated they did not remember performing this transfer and alleged that the document was wrong.[1527]  This same document also showed the transfer of 1,245,584 shares to Renugadevi in December 2010, the same amount Mr. and Mrs. Veluchamy testified Renugadevi was transferred in May 2008.[1528]  Mrs. Veluchamy disagreed that this transfer to Renugadevi occurred at this time and alleged the document was wrong.[1529]

573.    On June 18, 2012, subsequent to the May 30, 2012, 341 Meeting of Creditors, revised SPSM Form 20B Annual Returns were filed with the MCA for the years ended March 31, 2008, 2009, 2010, and 2011.[1530]  During the 341 Meeting of Creditors on June 7, 2012, days

---

[1522]    *See* 341 Meeting of Creditors Volume 4 dated May 30, 2012, pp. 811-814, Exhibit 45.

[1523]    *See* 341 Meeting of Creditors Volume 4 dated May 30, 2012, pp. 819-822, Exhibit 45.

[1524]    *See* 341 Meeting of Creditors Volume 4 dated May 30, 2012, pp. 819-822.

[1525]    *See* 341 Meeting of Creditors Volume 4 dated May 30, 2012, pp. 833-841, Exhibit 46.

[1526]    *See* 341 Meeting of Creditors Volume 4 dated May 30, 2012, pp. 833-841, Exhibit 46.

[1527]    *See* 341 Meeting of Creditors Volume 4 dated May 30, 2012, pp. 833-841.

[1528]    *See* 341 Meeting of Creditors Volume 4 dated May 30, 2012, p. 843, Exhibit 46.

[1529]    *See* 341 Meeting of Creditors Volume 4 dated May 30, 2012, p. 843.

[1530]    *See* SPSM Revised Form 20B and attachments for the years ended March 31, 2008, 2009, 2010, 2011. When asked if he personally talked to relatives in India and asked them to change the MCA documents so they would purport to show that the stock was transferred on May 1, 2008, Arun asserted his Fifth Amendment rights.

before these revised returns were filed, Mr. Veluchamy stated that he had recently spoken on the phone with Rajaram, who had called Mr. Veluchamy to tell him he was in the process of filing revised Form 20Bs.[1531]  Mr. Veluchamy stated he told Rajaram "[H]ey, whatever you have to do, you have to do and make sure the reports are filed correctly."[1532]  The revised SPSM Form 20B for the year ended March 31, 2008 showed Mr. and Mrs. Veluchamy transferred 1,245,584 shares to Renugadevi on May 1, 2008, as well as 171,268 shares to Mr. Veluchamy and 140,128 shares to Mrs. Veluchamy on that same date.[1533]  The previously discussed transfers to Arun and Anu were omitted, as were purported transfers to Arjun Parthasarathy in June 2009 (discussed in more detail above).[1534]  A letter accompanied the revised returns and stated that the annexures pertaining to the list of shareholders had omitted to capture the transfers.[1535]  The letter stated the error was discovered "during the internal audit" and that the Board resolved during its annual meeting on June 4, 2012 to correct the mistake.[1536]  When asked about these revised returns during a 341 Meeting of Creditors on July 19, 2012, Mr. Veluchamy did not recall signing any transfer forms pertaining to the transfers from Mr. and Mrs. Veluchamy jointly to each of them individually.[1537]  Mr. Veluchamy confirmed that Rajaram submitted the revised returns, but did

---

Arun also asserted his Fifth Amendment rights when asked if, as a result of asking his relatives to falsify their records, they subsequently created false records in 2012.  When asked if the contemporaneously filed MCA records were in fact correct, Arun again asserted his Fifth Amendment rights.  *See* deposition of Arun Veluchamy, dated March 27, 2013, pp. 280-282.  When asked if she had any role in correcting the MCA reports, or causing her relatives to change the MCA reports, Anu likewise asserted her Fifth Amendment rights.  *See* deposition of Anu Veluchamy dated February 26, 2013, pp. 183-184.

[1531]      *See* 341 Meeting of Creditors Volume 5 dated June 7, 2012, pp. 877-879.

[1532]      *See* 341 Meeting of Creditors Volume 5 dated June 7, 2012, pp. 877-879.

[1533]      *See* SPSM Revised Form 20B and attachments for the year ended March 31, 2008.

[1534]      *See* SPSM Revised Form 20B and attachments for the years ended March 31, 2008, 2009, 2010, 2011.

[1535]      *See* SPSM Revised Form 20B and attachments for the years ended March 31, 2008, 2009, 2010, 2011.

[1536]      *See* SPSM Revised Form 20B and attachments for the years ended March 31, 2008, 2009, 2010, 2011.

[1537]      *See* 341 Meeting of Creditors Volume 7 dated July 19, 2012, pp. 1413-1417.

not know where Rajaram obtained the information to split the Veluchamys' jointly held shares to individual ownership, which was done in the same manner as in the original 2009 MCA filings.[1538]

574.    When asked if the Veluchamys actually transferred any of their shares in SPSM to family members during 2008, Anu asserted her Fifth Amendment rights.[1539]

> ix.    The Veluchamys transferred millions of dollars in 2009 and 2010 to accounts at Canara Bank in India.  The existence of these accounts was identified in neither their personal financial statements nor their personal income tax returns.  The Veluchamys then transferred millions of dollars to SPSM and Jaya Velu Spinning Mills using these accounts during 2009 and 2010.  Approximately $5.5 million of these monies appear to have been provided to the Veluchamys' spinning mills without the Veluchamys receiving consideration in exchange.

575.    As discussed previously, the Veluchamys transferred millions of dollars from the U.S. to Canara Bank in India in 2009 and 2010.  A portion of this money was transferred to SPSM by the Veluchamys.

576.    First, on September 1, 2009, Mr. Veluchamy transferred 41 million rupees (approximately $832,000) to SPSM from his Canara Bank account.[1540]  The Veluchamys produced a letter dated September 5, 2009 purportedly from a manager at Jaya Velu Spinning Mill indicating that this transfer—which Canara Bank records show was made to SPSM—was

---

[1538]    *See* 341 Meeting of Creditors Volume 7 dated July 19, 2012, pp. 1413-1417; SPSM Form 20B and attachments for the year ended March 31, 2009.  *See also* 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibit 38.

[1539]    *See* deposition of Anu Veluchamy dated February 26, 2013, pp. 109-110.

[1540]    *See* PEV0755, ARV000850-851.  A letter dated September 5, 2009, stated this transfer of 41,000,000 rupees was purportedly made to pay down JVSM's line of credit at Canara Bank, even though the transfer was made to SPSM.  *See* PEV0328.

"to pay down [Jaya Velu Spinning Mill's] line of Credit borrowed from Canara Bank, Aruppukottai Branch (as demanded by the bank) for [its] Spinning Unit which was personally guaranteed by [Mr. Veluchamy] and Director Mrs. Parameswari Veluchamy."[1541]   As discussed in paragraph 664 below, this money appeared to reflect the return to SPSM of monies transferred from it to VMark on behalf of Mrs. Naidu on June 8, 2009.  Later, on February 12, 2010, Mr. Veluchamy received 41 million rupees (approximately $882,000) back from SPSM into his Canara Bank account.[1542]  Assuming the produced letter is authentic and accurately reflects the events, it appears the 41 million rupees transferred to SPSM in September 2009 were returned to Mr. Veluchamy in February 2010.   That this 41 million rupee payment by Mr. Veluchamy represented a return of the monies provided in September 2009 is supported by analysis of SPSM and JVSM's Form 23AC and attachments for the year-ended March 31, 2010, which indicated no increase in monies owed to Mr. and Mrs. Veluchamy (loans or equity) between March 31, 2009 and March 31, 2010.[1543]

577.   Next, Mr. and Mrs. Veluchamy's Statement of Financial Affairs filed on September 12, 2011 stated that the Veluchamys made loan repayments to SPSM on July 21, 2010 and July 26, 2010 for $2,356,552 and $1,230,435, respectively, with amount still owing described as "Unknown".[1544]   Canara Bank account records showed these two transfers were actually made to Jaya Velu Spinning Mills—not SPSM—for 56,600,000 rupees ($1.20 million)

---

[1541]   *See* PEV0328.

[1542]   *See* PEV1219.  Mr. Veluchamy subsequently transferred this money (*i.e.*, 40,000,000 rupees)  to Versatile Card Technology Private Limited in India in April 2010.   Versatile Card Technology Private Limited in India transferred 40,000,000 rupees back to Mr. Veluchamy on September 27, 2010, who in turn transferred these monies as indemnity payments to Arun and Anu that same day.

[1543]   *See* SPSM Form 23AC and attachments for the year ended March 31, 2010.

[1544]   *See* Pethinaidu and Parameswari Veluchamy Statement of Financial Affairs filed September 12, 2011.

on July 21, 2010 and 92,500,000 rupees ($1.95 million) on July 26, 2010.[1545]   Likewise, the

Veluchamys' Statement of Financial Affairs filed on September 12, 2011 also described a

$1,230,435 payment to Jayavelu Spinning Mills on July 21, 2010.[1546]   Canara Bank records

showed this transfer was made as described to Jaya Velu Spinning Mills in July 2010 for

108,400,000 rupees ($2.30 million) on July 23, 2010.[1547]   During a 341 Meeting of Creditors on

July 19, 2012, Mr. Veluchamy stated that these payments related to a combined loan between

SPSM and Jaya Velu Spinning Mills.[1548]   Mr. and Mrs. Veluchamy stated they did not know how

much was still owed on this loan at the time of bankruptcy.[1549]   The Veluchamys claimed that

they made these transfers to SPSM and JVSM because they were guarantors of these companies'

debt to Canara Bank.   Letters produced by the Veluchamys dated July 21, 2010 from Jaya Velu

Spinning Mills, July 23, 2010 from SPSM, and July 26, 2010 from SPSM purported to show that

---

[1545]   *See* PEV0748 and PEV0758; transfers occurred on July 22 and July 23, 2010 from Mr. Veluchamy's account at Canara Bank, and on July 26, 2010 from Mrs. Veluchamy's account at Canara Bank. *See* PEV0327; *See* ARV000852-853.

[1546]   *See* Pethinaidu and Parameswari Veluchamy Statement of Financial Affairs filed September 12, 2011.

[1547]   *See* PEV0758.

[1548]   *See* 341 Meeting of Creditors Volume 7 dated July 19, 2012, pp. 1343-1344.   On their Fifth Amended Statement of Financial Affairs filed on August 14, 2012, Mr. and Mrs. Veluchamy identified a payment of $1,230,435 to Jaya Velu Spinning Mills on July 21, 2010 and a payment of $2,356,522 to Parameswari Spinning Mills, also on July 21, 2010.  Both payments stated that the Debtors both guaranteed a $40 million loan and that they were unsure of the amount still owing, however, the "Amount Still Owing" for both of these payments was listed as $40 million.  *See* 341 Meeting of Creditors Volume 8 dated August 15, 2012, Exhibit 98.  When asked about these payments during the 341 Meeting of Creditors on August 15, 2012, Mr. Veluchamy stated the $40 million loan was a combined loan between SPSM and JVSM and that he did not know of any payments made on the $40 million loan, although he claimed the loan was guaranteed by himself, Mrs. Veluchamy, his children, and other Directors.  Mr. Veluchamy stated that JVSM was responsible for making payments on the loan, but the payments he made, listed on the Fifth Amended Statement of Financial Affairs, were made for working capital.  Mr. Veluchamy stated he did not know if payments on the loan were current, but that they had not received a demand on their guarantees.  *See* 341 Meeting of Creditors Volume 8 dated August 15, 2012, pp. 1439-1448.

[1549]   *See* 341 Meeting of Creditors Volume 7 dated July 19, 2012, pp. 1343-1344.

these payments were made to Canara Bank to repay loans owed by the two spinning mills.[1550]
These letters identified the payments as having been made to JVSM on July 21, 2010 (consistent
with the actual cash transfers made at Canara Bank), SPSM on July 23, 2010 (inconsistent with
the actual cash transfers made at Canara Bank), and SPSM on July 26, 2010 (inconsistent with
the actual cash transfers made at Canara Bank), described Mr. and Mrs. Veluchamy as
guarantors on "working capital loan[s]", and made no reference to any demand for payment by
Canara Bank made on either spinning mill or the Veluchamys as guarantors.[1551]   The
Veluchamys additionally produced three purported letters from Canara Bank dated May 10, 2011
to their U.S. accountant that certified these payments from Mr. and Mrs. Veluchamy were share
capital advances (*i.e.*, equity contributions) to Jaya Velu Spinning Mills on these three dates.[1552]
Assuming the produced letters are authentic and accurately reflects the events, the Veluchamys
appear to have received no consideration in exchange for their transfers of approximately $5.5
million to the spinning mills (see **Exhibit 4** for the Veluchamys' transfer of $5.5 million to the
spinning mills).   Neither SPSM nor JVSM's Form 23AC-XBRL and attachments for the year-
ended March 31, 2011 indicated any share capital advance or other increase in monies owed to
Mr. and Mrs. Veluchamy between March 31, 2009 and March 31, 2010.[1553]

> x.   <u>MCA filings indicate that SPSM actually owed the Veluchamys money
> through at least March 31, 2010.   SPSM appears to have repaid
> approximately $0.6 million of documented loans owed to the Veluchamys
> between April 1, 2010 and March 31, 2011.</u>

---

[1550]   *See* PEV0325-327.

[1551]   *See* PEV0325-327.

[1552]   *See* PEV1110, PEV1108, and PEV1106.

[1553]   *See* SPSM Form 23AC-XBRL and attachments for the year ended March 31, 2011; *see* JVSM Form 23AC-
XBRL and attachments for the year ended March 31, 2011.

578.    SPSM's Form 23AC for the year ended March 31, 2007, showed a share capital advance from Mr. Veluchamy to SPSM for 13,416,287 rupees, or about $309,000.[1554]  Then, as of March 31, 2008, the share capital advance was zeroed out on the financial statements, and an unsecured loan from Mr. Veluchamy appeared for the same amount.[1555]  The loan remained unchanged as of March 31, 2009.[1556]  As of March 31, 2010, the loan was retitled "Pethinaidu Veluchamy – Creative Automation Company."[1557]  Review of Creative Automation Company's financial statements as well as its bankruptcy filings describe no loan receivable from SPSM in 2008, 2009, 2010, or at the time of its bankruptcy filing.[1558]

579.    SPSM's Form 23AC for the years ended March 31, 2003 through 2010 also contained two unsecured loans totaling $320,256 (or 15,250,320 rupees) titled "Rupee Loan from NRI [non-resident Indian] Directors" and "Loan from NRI Directors" in the amounts of $251,583 (or 11,980,170 rupees) and $68,673 (or 3,270,150 rupees), respectively.[1559]

580.    Review of the SPSM Form 23AC for the year ended March 31, 2011, revealed that sometime between April 1, 2010 and March 31, 2011, millions of rupees were apparently paid to Mr. Veluchamy related to these NRI Director unsecured loans and this loan allegedly

--------------------------------------------

[1554]    *See* SPSM Form 23AC and attachments for the year ended March 31, 2007.

[1555]    *See* SPSM Form 23AC and attachments for the year ended March 31, 2008.  *See also* 341 Meeting of Creditors Volume 6 dated June 19, 2012, Exhibit 60.  It does not appear shares were issued in exchange for this share capital advance, as the value of issued shares remained the same from March 31, 2005, through at least the time the funds were reclassified.  *See* SPSM Form 23AC and attachments for the years ended March 31, 2006, 2007, 2008.  *See also* 341 Meeting of Creditors Volume 6 dated June 19, 2012, Exhibit 60.

[1556]    *See* SPSM Form 23AC and attachments for the years ended March 31, 2009, 2010.

[1557]    *See* SPSM Form 23AC and attachments for the years ended March 31, 2009, 2010.

[1558]    *See* CAC000002, 8; Creative Automation Company Bankruptcy Schedules and Statement of Financial Affairs dated October 10, 2011.

[1559]    *See* SPSM Form 23AC and attachments for the years ended March 31, 2006, 2007, 2008, 2009, 2010 and SPSM Balance Sheet and attachments as of March 31, 2004 and 2005.  *See also* 341 Meeting of Creditors Volume 6 dated June 19, 2012, Exhibit 60.

related to Mr. Veluchamy and Creative Automation Company.  It is unclear as to whether these amounts were paid to Mr. Veluchamy before or after the judgments entered into on December 31, 2010.  Further, none of the aforementioned alleged loans due to Mr. Veluchamy were disclosed in his personal financial statements.[1560]  Specifically, an apparent payment was made to Mr. Veluchamy in the amount of $624,932 (or 28,666,607 rupees) sometime between April 1, 2010 and March 31, 2011.[1561]  Per the March 31, 2011 balance sheet, this apparent payment related to two unsecured loans "Rupee term loans unsecured" and "Foreign currency loans unsecured" in the amounts of $261,167 (or 11,980,170 rupees) and $363,746 (or 16,686,437 rupees), respectively.[1562]  I have observed no apparent deposits into Mr. or Mrs. Veluchamy's domestic or Canara Bank accounts from SPSM during this time period.  These apparent payments raise the possibility the Veluchamys maintain other unidentified bank accounts in India.

xi.  <u>Cash activity indicates Anu Veluchamy transferred additional funds into SPSM and received funds from SPSM for unknown reasons. She eventually transferred these funds to Sterling Bank to benefit Qualteq, Inc.</u>

581.  On June 30, 2011, Anu transferred 1,000,000 rupees, or about $22,000, to SPSM.[1563]  Then, on August 18, 2011, days after her parents and the Veluchamy family

---

[1560]    *See* BOA Exhibits 16, 17, 18, and 35.

[1561]    *See* SPSM Form 23AC-XBRL and attachments for the year ended March 31, 2011.  Rupees translated to US Dollars based on the average daily bid rate for the period of April 1, 2010 through March 31, 2011 of .0218 as reported by Oanda.com.

[1562]    *See* SPSM Form 23AC-XBRL and attachments for the year ended March 31, 2011.  The SPSM balance sheet for the year ended March 31, 2010 revealed that the loan titled "Foreign currency loans unsecured" on the March 31, 2011 balance sheet was comprised of two unsecured loans titled "Loan from NRI Directors" and "Pethinaidu Veluchamy – Creative Automation Company Inc." in the amounts of $71,286 (or 3,270,150 rupees) and $292,460 (or 13,416,287 rupees), respectively.  *See* SPSM Form 23AC and attachments for the year ended March 31, 2010.

[1563]    *See* ARV-AP01256.

companies filed for bankruptcy, Anu received 1,000,000 rupees back from SPSM into her Canara Bank account.[1564]   One day later, on August 19, 2011, days after the bankruptcy filings, Anu transferred 921,228 rupees from her Canara Bank account to the United States.[1565] Specifically, it appears $19,973 was deposited in her personal domestic Citibank account ending in 6100 via a wire in from JP Morgan Bank on the same day.[1566]   The day this wire was initiated from Canara Bank, August 18, 2011, Anu wired $20,000 to Sterling National Bank in regards to Qualteq, Inc. from her domestic Citibank account ending in 6100.[1567]   I have observed no documents or testimony evidencing why Anu received these transfers from SPSM, or why she transferred funds to SPSM.  At no time did MCA documents show that SPSM owed money or lent money to Anu.[1568]

> xii.   <u>The Veluchamys jointly reported approximately $14.25 million of unsecured non-priority obligations to Canara Bank in India related to SPSM.  This amount may reflect a contingently due amount associated with alleged personal guarantees provided to Canara Bank in India.</u>

582.   The Veluchamys' Schedule F – Creditors Holding Unsecured Nonpriority Claims listed Canara Bank as a creditor for $14.25 million with reference to Parameswari Spinning

---

[1564]   *See* ARV-AP01258.  When asked why she received this 1 million rupee transfer from SPSM, Anu asserted her Fifth Amendment rights.  *See* deposition of Anu Veluchamy, dated February 26, 2013, pp. 69-72.

[1565]   *See* ARV-AP01258.

[1566]   *See* CIT-AP000083-87, 115.  When asked why she converted this transfer of 1 million rupees from SPSM to dollars, and what she did with the funds after they were converted, Anu asserted her Fifth Amendment rights.  *See* deposition of Anu Veluchamy, dated February 26, 2013, pp. 69-72.

[1567]   *See* CIT-AP000083-87, 119.  Of note, and as discussed in further detail below, Arun made a similar series of transfers from his Canara Bank in India to his JPMorgan Chase account in the United States, and then transferred those funds to Sterling Bank as well.  *See* AKVC-AP000011, JPM-AP04913.

[1568]   *See* SPSM Form 23AC and attachments for the years ended March 31, 2006, 2007, 2008, 2009, 2010, 2011.  *See also* 341 Meeting of Creditors Volume 6 dated June 19, 2012, Exhibit 60.

Mills.[1569]  Parameswari Spinning Mill itself was also listed on Schedule F as a creditor, with the amount of claim listed as "Unknown."[1570]  After reviewing the SPSM Form 23ACs for the years ended March 31, 2005, 2006, 2007, 2008, 2009, 2010, and 2011, I have seen no evidence of the Veluchamys directly owing SPSM money.[1571]  Members of the Veluchamy family have produced documents purporting to show that Mr. and Mrs. Veluchamy as well as Arun and Anu personally guaranteed a loan for 1.17 billion rupees, or about $25.97 million, from Canara Bank to SPSM on March 31, 2010.[1572]  I further noted that during the 341 Meeting of Creditors on October 11, 2011, Mr. Veluchamy stated that he, Arun, and Anu were guarantors on a $40 million loan from Canara Bank.[1573]  Review of the actual borrowings of SPSM as of March 31, 2009 through 2011 indicates the total amount due to Canara Bank was approximately 584 million rupees (approximately $11.21 million), 764 million rupees (approximately $16.96 million), and 850 million rupees (approximately $18.70 million), respectively, as of these dates.[1574]  These amounts are materially consistent with the $14.25 million identified by the Veluchamys in their bankruptcy filings but were also secured loan amounts, rather than unsecured, as described in the Veluchamys' Schedule F.  I noted that Mr. Veluchamy also testified that the $40 million of borrowings from Canara Bank were also secured by equipment, machinery, raw materials, and other assets of SPSM in addition to his family's alleged guarantees.[1575]

---

[1569]    *See* Pethinaidu and Parameswari Veluchamy Schedule F – Creditors Holding Unsecured Nonpriority Claims filed August 16, 2011.

[1570]    *See* Pethinaidu and Parameswari Veluchamy Schedule F – Creditors Holding Unsecured Nonpriority Claims filed August 16, 2011.

[1571]    *See* SPSM Form 23AC and attachments for the years ended March 31, 2006, 2007, 2008, 2009, 2010, 2011.  *See also* 341 Meeting of Creditors Volume 6 dated June 19, 2012, Exhibit 60.

[1572]    *See* AKV000229, 231, PAV 200-206, PEV0854-860.

[1573]    *See* 341 Meeting of Creditors Volume 1 dated October 11, 2011, pp. 113-114.

[1574]    *See* SPSM Form 23AC and attachments for the years ended March 31, 2009, 2010, 2011.

[1575]    *See* 341 Meeting of Creditors Volume 1 dated October 11, 2011, p. 102.

C. *Transfers of Assets and Interests Involving Jaya Velu Spinning Mills Private Limited*

i. Background

583.    JVSM is located at 38, 39, 4A Great Cotton Road, Pandalgudi, Aruppukottai, Virudhunagar, Tamil Nadu.[1576]  This is the same address as SPSM (discussed previously) as well as Jayaarun Spinning Mills and Jayaanu Spinning Mills (discussed further below).  The company operates a spinning unit with an installed capacity of about 40,000 spindles.[1577]  Revenues for the years ended March 31, 2010 and 2011 were 292,196,000 rupees and 475,726,000 rupees, or approximately $6.14 million and $10.37 million, respectively.[1578]

584.    JVSM was registered with the MCA on January 24, 1994.[1579]  Mr. Veluchamy and Mrs. Veluchamy were named Directors of the company on the date of registration.[1580]  As of March 31, 2006, the company had 31,262 shares of issued capital, and 100 percent of the equity shares were held by Directors or relatives of Directors.[1581]  As of at least that date, Mr. and Mrs. Veluchamy jointly held 31,260 shares of JVSM, which had a par value of 10 rupees per share, or equivalent to 99.99 percent of the issued shares.[1582]

---

[1576]    *See* JVSM Form 20B and attachments for the year ended March 31, 2006.

[1577]    *See* JVSM website accessed April 8, 2013.

[1578]    *See* JVSM Form 23AC-XBRL attachment for the year ended March 31, 2011.  USD conversion based on average conversation rates of .0210 and .0218 during 2010 and 2011, respectively, as reported by Oanda.com.

[1579]    *See* JVSM Form 20B and attachments for the year ended March 31, 2006.

[1580]    *See* JVSM Form 20B and attachments for the year ended March 31, 2006.  When asked if JVSM was founded and owned by Veluchamy family members, Arun asserted his Fifth Amendment rights.  *See* deposition of Arun Veluchamy dated March 27, 2013, p. 134.

[1581]    *See* JVSM Form 20B and attachments for the year ended March 31, 2006.

[1582]    *See* JVSM Form 20B and attachments for the year ended March 31, 2006.

ii.   The personal financial statements and bankruptcy filings of the Veluchamys describe ownership of Jaya Velu Spinning Mills between December 31, 2007 and August 16, 2011.  According to these documents, the Veluchamys' ownership interests in Jaya Velu Spinning Mills declined approximately 89 percent during this time.

585.   Mr. and Mrs. Veluchamy's personal financial statement for the year ending December 31, 2007 valued their interest in JVSM at $2 million, and stated they owned 100 percent of the company.[1583]  On this personal financial statement, the Veluchamys affirmatively stated that the shares were not pledged or encumbered in any way.[1584]  As of December 31, 2008, the Veluchamys described no ownership of JVSM on their personal financial statement, although MCA corporate filings at the time indicated no share ownership change from 2007.[1585]  In their personal financial statements as of April 30, 2010, Mr. and Mrs. Veluchamy identified a fraction of previously represented ownership in JVSM, listing market value of their ownership interests as $82,500 and $67,500, respectively, and ownership interests of 11 percent and 9 percent of JVSM, respectively.[1586]  The shares were not identified as pledged or encumbered in any way on Mr. and Mrs. Veluchamy's April 30, 2010 personal financial statements.[1587]  In their initial

---

[1583]   *See* BOA Exhibit 16 at BOA0002665.  When asked during a 341 Meeting of Creditors about their ownership interest in JVSM on December 31, 2007, Mr. and Mrs. Veluchamy declined to answer and asserted their Fifth Amendment Rights.  *See* 341 Meeting of Creditors Volume 2 dated May 14, 2012, pp. 366-368.  When asked about this reported value of $2 million, Anu asserted her Fifth Amendment rights.  *See* deposition of Anu Veluchamy dated February 26, 2013, p. 112.

[1584]   *See* BOA Exhibit 16 at BOA0002665.

[1585]   *See* BOA Exhibit 17 at BOA002660-2662; JVSM Form 20B and attachments for the years ended March 31, 2007, 2008, 2009.  *See also* 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibits 41, 42, 43.

[1586]   *See* BOA Exhibits 18, 35.  Note it appears these percentages were calculated incorrectly; in April 2010 per MCA documents, Mr. and Mrs. Veluchamy owned 6.25 percent and 5.11 percent of JVSM, respectively.  *See* JVSM Form 20B for the years ended March 31, 2010, 2011.  *See also* 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibits 44A, 47.

[1587]   *See* BOA Exhibits 18, 35.

bankruptcy disclosures filed on September 12, 2011, Mr. and Mrs. Veluchamy represented that they owned 6.25 percent and 5.11 percent, respectively, of JVSM, and reported the current value of these shares as "Unknown".[1588]  Of note, the Veluchamys disclosed no transfers of JVSM stock during the last two years preceding their bankruptcy petition in their bankruptcy filing.[1589] The table below summarizes the Veluchamys' historical reported ownership.[1590]

| | Shares or Share Percentage Owned As of: | | | |
|---|---|---|---|---|
| | 12/31/2007 [1] | 12/31/2008 [2] | 4/30/2010 [3] | 9/12/2011 [4] |
| Mr. Veluchamy | 100% (jointly) | Omitted | 11% | 6.25% |
| Mrs. Veluchamy | 100% (jointly) | Omitted | 9% | 5.11% |

[1] BOA Exhibit 16 at BOA0002665
[2] BOA Exhibit 17 at BOA002660-2662
[3] BOA Exhibits 18, 35
[4] Pethinaidu and Parameswari Veluchamy Schedule B - Personal Property filed 9/12/2011

    iii.   <u>Contemporaneous MCA filings show that beginning in October 2009 and continuing through December 2010 Mr. and Mrs. Veluchamy transferred most of their shares in JVSM to their children and other relatives in India.</u>

586.   Between September 2006 and September 2007, JVSM issued an additional 9,968,738 shares jointly to Mr. and Mrs. Veluchamy, bringing their total share ownership to

[1588]   *See* Pethinaidu and Parameswari Veluchamy Schedule B – Personal Property filed September 12, 2011. Note on Schedule D of their original bankruptcy filing the Veluchamys stated their remaining shares were pledged to Arjun Parthasarathy, but not transferred as subsequent documents showed.  *See* Pethinaidu and Parameswari Veluchamy Schedule D – Creditors Holding Secured Claims filed August 16, 2011.

[1589]   *See* Pethinaidu and Parameswari Veluchamy Statement of Financial Affairs Part 10 filed September 12, 2011.  The Veluchamys confirmed that there were no transfers of JVSM within two years of their bankruptcy filing. *See* 341 Meeting of Creditors Volume 2 dated May 14, 2012, pp. 370-372

[1590]   *See* BOA Exhibit 16 at BOA0002665; BOA Exhibit 17 at BOA002660-2662; BOA Exhibits 18, 35; Pethinaidu and Parameswari Veluchamy Schedule B – Personal Property filed September 12, 2011.

9,999,998 shares.[1591]  In a Form 5 dated March 5, 2008 and filed on October 16, 2008, JVSM increased its authorized capital from 10,000,000 shares to 18,000,000 shares, with a par value of 10 rupees per share.[1592]  A Form 2 dated March 28, 2008 and filed on March 13, 2009 stated that JVSM issued 7,600,000 of these additional 8,000,000 authorized shares to companies also owned by the Veluchamy family (as discussed in further detail above and below): 1,250,000 shares to Versatile Card Technology (P) Ltd. ("VCT India"), 3,600,000 to CAC Software Consultancy (P) Ltd. ("CAC Software"), and 2,750,000 shares to SPSM for a par value of 10 rupees per share.[1593] Then, on July 23, 2010, JVSM again increased its authorized capital from 18,000,000 shares to 44,000,000 shares with a par value of 10 rupees.[1594]

587.    According to JVSM's Form 20B for the fiscal year ending March 31, 2010, on October 12, 2009 Mr. and Mrs. Veluchamy transferred the entirety of their (to that point) jointly held shares to four different parties individually: 1,100,000 shares to Mr. Veluchamy, 900,000 shares to Mrs. Veluchamy, and 3,999,999 shares each to Arun and Anu.[1595]  I have observed no documents or testimony evidencing that consideration was provided in exchange for these share transfers.  When asked if the Veluchamys transferred approximately 4,000,000 shares of JVSM to Arun and Anu on October 12, 2009, Arun and Anu both asserted their Fifth Amendment

---

[1591]    See JVSM Form 20B and attachments for the years ended March 31, 2006, 2007.  Note no Form 2 was filed for this share issuance.  See also 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibit 41.

[1592]    See JVSM Form 5 and attachments dated March 5, 2008.

[1593]    See JVSM Form 2 and attachments dated March 28, 2008.  See SPSM Form 23AC and attachments for the year ended March 31, 2008; VCT India Form 23AC and attachments for the year ended March 31, 2008, CAC Software Form 23AC and attachments for the year ended March 31, 2008.  See also 341 Meeting of Creditors Volume 6 dated June 19, 2012, Exhibit 60.

[1594]    JVSM Form 5 and attachments dated July 23, 2010.

[1595]    See JVSM Form 20B and attachments for the year ended March 31, 2010.  See also 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibit 47.

rights.[1596]  When asked if his parents transferred their interest in JVSM to him and Anu (i) to hinder his parents' creditors, (ii) to keep all property and money of his parents in his family, or (iii) to defraud his parents' creditors; if he and his sister were involved in planning and executing these transfers; and, if he and his sister did not pay equivalent value for the shares, Arun asserted his Fifth Amendment rights.[1597]  The table below summarizes the October 12, 2009 activity.

| | |
|---|---:|
| **JVSM shares jointly held by Mr. and Mrs. Veluchamy prior to 10/12/2009 per contemporaneous MCA filings:** | 9,999,998 |
| **JVSM shares transferred on 10/12/2009 to individuals per contemporaneous MCA filings:** | |
| Mr. Veluchamy | 1,100,000 |
| Mrs. Veluchamy | 900,000 |
| Arun | 3,999,999 |
| Anu | 3,999,999 |
| | 9,999,998 |

588.    Subsequently, on November 16, 2009, the JVSM Form 20B for the year-ended March 31, 2010 showed Arun and Anu were appointed as Directors of the company.[1598]  On December 6, 2010, approximately one year later and about three weeks before the December 30, 2010 judgments against Mr. and Mrs. Veluchamy, the JVSM Form 20B for the year-ended March 31, 2011 showed Arun transferred his 3,999,999 shares of JVSM to Mr. Veluchamy and Anu transferred her 3,999,999 shares of JVSM to Mrs. Veluchamy.[1599]  Then, on December 9,

---

[1596]    *See* deposition of Anu Veluchamy dated February 26, 2013, pp. 112-113; deposition of Arun Veluchamy dated March 27, 2013, p. 263.

[1597]    *See* deposition of Arun Veluchamy dated March 27, 2013, pp. 155-159.

[1598]    *See* JVSM Form 20B and attachments for the year ended March 31, 2010.  *See also* 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibit 47.  When asked if he was a Director of JVSM, Arun asserted his Fifth Amendment rights.  *See* deposition of Arun Veluchamy dated March 27, 2013, pp. 223-224.

[1599]    *See* JVSM Form 20B and attachments for the year ended March 31, 2011.  *See also* 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibit 44A.  During his citation examination on May 26, 2011, Arun

2010, the JVSM Form 20B for the year-ended March 31, 2011 showed Mr. and Mrs. Veluchamy each transferred 3,999,999 shares of JVSM to Renugadevi.[1600]   I observed no documents or testimony evidencing that consideration was provided in exchange for these share transfers. Arun and Anu asserted their Fifth Amendment rights when asked if they transferred the JVSM shares back to their parents, which were then transferred to Renugadevi.[1601]   When asked if the purpose of these transfers of JVSM shares back and forth was to hide and keep Mr. and Mrs. Veluchamy's property from creditors, Arun and Anu both asserted their Fifth Amendment rights.[1602]   When asked if her parents were paid a fair value for these share transfers, Anu asserted her Fifth Amendment rights.[1603]   After these transfers, Mr. Veluchamy continued to own 1,100,000 shares, and Mrs. Veluchamy continued to own 900,000 shares, per contemporaneous MCA records and consistent with their bankruptcy schedules, filed on September 12, 2011.[1604] The table below summarizes this December 2010 activity.

---

stated that he and Anu currently owned shares in Mr. and Mrs. Veluchamy's spinning mills businesses.  *See* deposition of Arun Veluchamy dated May 26, 2011, pp. 311-312, 314-315, 325-326.

[1600]      *See* JVSM Form 20B and attachments for the year ended March 31, 2011.  *See also* 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibit 44A.

[1601]      *See* deposition of Anu Veluchamy dated February 26, 2013, pp. 113-114; deposition of Arun Veluchamy dated March 27, 2013, pp. 263-264.

[1602]      *See* deposition of Anu Veluchamy dated February 26, 2013, p. 114; deposition of Arun Veluchamy dated March 27, 2013, p. 264.

[1603]      *See* deposition of Anu Veluchamy dated February 26, 2013, p. 114.

[1604]      *See* Pethinaidu and Parameswari Veluchamy Schedule B – Personal Property filed September 12, 2011; JVSM Form 20B and attachments for the year ended March 31, 2011.  *See also* 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibit 44A.

|  | **Per Contemporaneous MCA Documents, JVSM Shares Owned As of:** | | |
|---|---|---|---|
|  | **12/5/2010** | **12/6/2010** | **12/9/2010** |
| **Mr. Veluchamy** | 1,100,000 | 5,099,999 | 1,100,000 |
| **Mrs. Veluchamy** | 900,000 | 4,899,999 | 900,000 |
| **Arun** | 3,999,999 | - | - |
| **Anu** | 3,999,999 |  |  |
| **Renugadevi** | - | - | 7,999,998 |
| **Total** | 9,999,998 | 9,999,998 | 9,999,998 |

iv.    <u>Both cash activity and contemporaneous MCA filings indicate that Arun Veluchamy purchased additional, newly issued shares of JVSM using monies extracted from other Veluchamy businesses in India.</u>

589.    On July 27, 2011, Arun received 41,000,000 rupees, or about $920,000, from Jayaarun Spinning Mills Private Limited ("JArSM") into his Canara Bank account.[1605]   On that same day, Arun transferred these 41,000,000 rupees to JVSM; it appears based on the JVSM Form 2 dated January 5, 2012 that the funds from JArSM were used to acquire 4,100,000 shares of JVSM with a par value of 10 rupees each.[1606]   According to JVSM's Form 2 dated January 5,

---

[1605]    *See* AKVC-AP000010.  As of the date of this report, I have been provided with insufficient information with which to ascertain the source of Jayaarun Spinning Mills Private Ltd.'s capitalization.  However, I note that this entity was registered with the MCA (*i.e.*, incorporated) in January 2011, that Arun and Anu each claimed to only have one account each at Canara Bank in India as of May 2011, as previously described, and that no activity within any of the Veluchamy family members' Canara Bank accounts involved Jayaarun Spinning Mills Private Ltd. prior to July 27, 2011.  *See* JArSM Form 32 dated January 28, 2011; deposition of Arun Veluchamy dated May 4, 2011, p. 9; deposition of Anu Veluchamy dated May 10, 2011, pp. 18-19.  *See* deposition of Anu Veluchamy dated February 26, 2013, pp. 77-79.  *See* paragraphs 612 to 627 for further discussion of JArSM.  *See also* 341 Meeting of Creditors Volume 2 dated May 14, 2012, Exhibit 17.

[1606]    *See* AKVC-AP000010; JVSM Form 2 and attachments dated January 5, 2012.  When asked if he received these 41 million rupees from JArSM, if he was a founder of JArSM, if the funds were fraudulently transferred from his parents, if it was money received from his parents after JArSM was founded by his parents in January 2011, and if he transferred those funds to JVSM the same day, Arun asserted his Fifth Amendment rights.  *See* deposition of Arun Veluchamy dated March 27, 2013, pp. 220-223.  *See* paragraphs 612 to 627 for further discussion of JArSM.

2012, JVSM issued 4,100,000 shares (par value 10 rupees) to Arun on January 5, 2012.[1607]
When asked about this series of transfers of funds in exchange for stock, Arun asserted his Fifth
Amendment rights.[1608]  The table below summarizes this activity.

| Date | Description | Withdrawal (INR) | Deposit (INR) |
|---|---|---|---|
| 7/27/2011 | Transfer from JArSM | | 41,000,000.00 |
| 7/27/2011 | Transfer to JVSM | (41,000,000.00) | |

590.    Later, on October 20, 2012, the JVSM Form 22B showed Arun's 4,100,000
shares were transferred to V. Prem Subburaj, Trustee of the Arunkumar Veluchamy Family Trust
for which Arun was the beneficiary.[1609]  When asked about this transfer during deposition, and if
he performed the transfer to hide assets he received from his parents, Arun asserted his Fifth
Amendment rights.[1610]

591.    In JVSM's Form 32 dated December 22, 2011 and filed on May 8, 2012, Mr. and
Mrs. Veluchamy resigned as Directors of JVSM.[1611]  In JVSM's Form 32 dated June 30, 2012,
and filed on July 4, 2012, Arun and Anu resigned as Directors of JVSM.[1612,1613]

---

[1607]    *See* JVSM Form 2 and attachments dated January 5, 2012.

[1608]    *See* deposition of Arun Veluchamy dated March 27, 2013, pp. 222-225.

[1609]    *See* JVSM Form 22B and attachments dated October 20, 2012.  This JVSM Form 22B and its attachments
were filed on November 22, 2012.

[1610]    *See* deposition of Arun Veluchamy dated March 27, 2013, pp. 135-136.

[1611]    *See* JVSM Form 32 and attachments dated December 22, 2011.

[1612]    *See* JVSM Form 32 and attachments dated June 30, 2012.

[1613]    As of the date of this report, according to MCA filings, JVSM's current remaining directors are
Gopalakrishnan Rajaram, Kitchanan Subbarajulu, and Dinakaran Gopal.  See SPSM Form 20B for the year ended
March 31, 2011 filed June 22, 2011.  At the 341 Meeting of Creditors on May 24, 2012, Mr. Veluchamy
acknowledged that Gopalakrishnan Rajaram is his brother-in-law (See 341 Meeting of Creditors Volume 3 dated
May 24, 2012, pp. 489-490).

     v.    <u>Contrary to their April 30, 2010 personal financial statements, the Veluchamys allege that their remaining shares in JVSM were pledged to their nephew, Arjun Parthasarathy, in May or June 2009.</u>

592.    As of at least December 9, 2010, contemporaneous MCA filings show that Mr. and Mrs. Veluchamy still held 1,100,000 and 900,000 shares, respectively, of JVSM. Consistent with this observation, Mr. Veluchamy confirmed that he was a minority shareholder in JVSM during his first citation examination on April 7, 2011.[1614] Arun also confirmed this statement during his citation examination on May 26, 2011, stating his parents had shares in JVSM and still owned those shares.[1615] During his citation examination, Rajiv Parthasarathy stated that the Veluchamys "control[led]" companies in India, including JVSM.[1616]

593.    During his citation examination on July 19, 2011, Mr. Veluchamy testified that his and his wife's shares in JVSM were pledged to Arjun Parthasarathy in exchange for a $1 million loan to SPSM.[1617] This share pledge was in addition to a pledge of all shares the Veluchamys owned in SPSM and VCT India, as discussed in paragraph 562 above and paragraph 649 below. Per Mr. Veluchamy, the documents purporting to show this share pledge were in Arjun Parthasarathy's possession, and were created sometime in May or June of 2009.[1618] However, the Veluchamys' personal financial statements as of April 30, 2010 identified no such pledge or encumbrance.[1619] The Veluchamys produced two Limited Recourse Guaranty and Collateral Pledge Agreements which purported to show that they pledged their

---

[1614]    *See* deposition of Pethinaidu Veluchamy dated April 7, 2011, pp. 67, 189.

[1615]    *See* deposition of Arun Veluchamy dated May 26, 2011, pp. 311-315.

[1616]    *See* deposition of Rajiv Parthasarathy dated April 15, 2011, pp. 193-194.

[1617]    *See* deposition of Pethinaidu Veluchamy dated July 19, 2011, pp. 916-920; BOA Exhibits 18, 35. As discussed in more detail in paragraph 664, this loan from Arjun Parthasarathy was purportedly extended to SPSM [beginning a series of transfers to the United States and subsequently back to India] .

[1618]    *See* deposition of Pethinaidu Veluchamy dated July 19, 2011, pp. 916-920.

[1619]    *See* BOA Exhibits 18, 35.

shares in JVSM to Arjun Parthasarathy "as of" June 3, 2009.[1620]  In these agreements, Mr. and Mrs. Veluchamy pledged their shares individually to Arjun Parthasarathy; however, at this point in time and until October 12, 2009, the Veluchamys still owned their shares in JVSM jointly.[1621] When asked about these documents during a 341 Meeting of Creditors on July 19, 2012, Mr. Veluchamy still claimed they were drafted around June 3, 2009, the date of the documents and when the funds were allegedly transferred.[1622]  However, the individual pledge references— which predate the October 12, 2009 transfers which established Mr. and Mrs. Veluchamy's individual holdings—indicate that these guaranty and pledge documents were drafted after October 12, 2009.

      vi.    After their bankruptcy filing, the Veluchamys produced share transfer records that purport to show the transfer of their remaining JVSM shares to Arjun Parthasarathy in June 2009.  These share transfer records contradict the Veluchamys' personal financial statements dated April 30, 2010, the Veluchamys' bankruptcy schedules, the Veluchamys' testimony, and contemporaneous MCA filings.

594.    JVSM Form 7B Share Transfer Forms produced by the Veluchamys on May 11, 2012 purported to show that Mr. Veluchamy transferred 1,100,000 shares of JVSM for no consideration to Arjun Parthasarathy on June 3, 2009, and that Mrs. Veluchamy transferred 900,000 shares of JVSM for no consideration to Arjun Parthasarathy on June 3, 2009.[1623]  When

---

[1620]    *See* 341 Meeting of Creditors Volume 7 dated July 19, 2012 Exhibits 93, 94 at VELUBK002528-2537, 3519-3528.

[1621]    *See* 341 Meeting of Creditors Volume 7 dated July 19, 2012 Exhibits 93, 94 at VELUBK002528-2537, 3519-3528; JVSM Form 20B and attachments for the years ended March 31, 2009 and 2010.  *See also* 341 Meeting of Creditors Volume 4 dated May 30, 2012, Exhibits 43, 47.  When asked about whether these shares were owned jointly or separately, Mr. Veluchamy was unable to give a clear answer.  *See* 341 Meeting of Creditors Volume 7 dated July 19, 2012, pp. 1389-1398.

[1622]    *See* 341 Meeting of Creditors Volume 7 dated July 19, 2012, pp. 1369-1370.

[1623]    *See* 341 Meeting of Creditors Volume 2 dated May 14, 2012, Exhibit 8 at D00014-15.

asked about these share transfer forms during the 341 Meeting of Creditors on May 14, 2012, Mr. and Mrs. Veluchamy initially stated they did not remember when they signed these transfer forms but claimed they signed the blank form at the time of pledging in the presence of a notary on June 3, 2009.[1624]

595.    These Form 7B Share Transfer Forms were contrary to previous documents produced, previous testimony, bankruptcy filings, and documents contemporaneous documents on file with the MCA.   First, the transfer forms purported to show that Mr. and Mrs. Veluchamy's shares were transferred to Arjun Parthasarathy on June 3, 2009, rather than outright owned by Mr. and Mrs. Veluchamy or pledged to Arjun Parthasarathy, as Mr. Veluchamy previously stated.[1625]   Second, the Veluchamys' personal financial statements as of April 30, 2010 stated that Mr. and Mrs. Veluchamy still owned these shares as of at least April 30, 2010 and noted no encumbrance of the shares.[1626]   Third, the Veluchamys' bankruptcy schedules also stated the shares were pledged—not transferred—to Arjun Parthasarathy as of August 2011.[1627]   Only in the second 341 Meeting of Creditors on May 14, 2012 did Mr. Veluchamy state the shares were transferred to Arjun Parthasarathy, but even then he contradicted the document and claimed the shares had been transferred after the bankruptcy filing.[1628]   To the extent the revised returns filed on June 18, 2012 are relevant, as discussed in further detail in paragraph 603 below, they also did not reflect this alleged June 2009 transfer.[1629]

---

[1624]    *See* 341 Meeting of Creditors Volume 2 dated May 14, 2012, pp. 402-404.

[1625]    *See* deposition of Pethinaidu Veluchamy dated July 19, 2011, pp. 916-920.

[1626]    *See* BOA Exhibits 18, 35.

[1627]    *See* Pethinaidu and Parameswari Veluchamy Schedule B – Personal Property filed September 12, 2011; Pethinaidu and Parameswari Veluchamy Schedule D – Creditors Holding Secured Claims filed August 16, 2011. The total amount of the claim, without deducting the value of the collateral, was $370,000 and $300,000 for Mr. and Mrs. Veluchamy, respectively.   The total collateral associated with these claims contained shares of SPSM, JVSM and VCT India.

[1628]    *See* 341 Meeting of Creditors Volume 2 dated May 14, 2012, pp. 246-250.

[1629]    *See* JVSM Revised Form 20B and attachments for the years ended March 31, 2009, 2010, 2011.